Darrell L. Olson (Bar No. 77633)
darrell.olson@knobbe.com
Edward A. Schlatter (Bar No. 120177)
edward.schlatter@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Suite 1400
Irvine, CA 92614
Telephone: 949-760-0404
Facsimile: 949-760-9502

Timothy J. Goodson (Bar No. 244649)
timothy.goodson@kmob.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
333 Bush Street, 21st Floor
San Francisco, CA 94104
Telephone: 415-954-4114
Facsimile: 415-954-4111

Attorneys for Defendant/Counterclaimant
SPECIALIZED BICYCLE COMPONENTS, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ICON-IP PTY, LTD., <br><br> Plaintiff/Counterdefendant, <br><br> v. <br><br> SPECIALIZED BICYCLE COMPONENTS, INC., <br><br> Defendant/Counterclaimant. | Case No. CV-12-3844 JST <br><br> **OPPOSITION OF DEFENDANT SPECIALIZED BICYCLE COMPONENTS, INC. TO PLAINTIFF ICON'S MOTION FOR LEAVE TO AMEND ITS DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS** <br><br> Date: May 2, 2013 <br> Time: 2:00 p.m. <br> Ctrm: 9 <br><br> Hon. Jon S. Tigar |

**TABLE OF CONTENTS**

**Page No.**

I.    INTRODUCTION ................................................................................................ 2

II.   FACTUAL BACKGROUND................................................................................. 3

III.  LEGAL STANDARD .......................................................................................... 7

IV.  ARGUMENT........................................................................................................ 9

      A.    Icon Cannot Meet the Good Cause Standard Because Icon Had the Information About the Models Icon Seeks to Add and Such Information Was Readily Available .................................................. 9

          1.    Prior to its contentions, Icon had documents depicting the new models ........................................................................... 9

          2.    The information about the new models was easily accessible from a single source ............................................................ 10

          3.    The Specialized saddles are widely and publicly available ................ 11

      B.    Icon's Arguments for Good Cause Are Unpersuasive .................................... 12

      C.    Permitting Icon to Amend Would Violate the Principles Underlying the Patent Local Rules ....................................................................... 15

V.   CONCLUSION.................................................................................................. 16

# TABLE OF AUTHORITIES

**Page No(s).**

*3Com Corp. v. D-Link Sys., Inc.*,
   2007 WL 949599 (N.D. Cal. Mar. 27, 2007) ................................................................. 14

*Acer, Inc. v. Tech. Properties Ltd*,
   Case No. 5:08-cv-00877 JF, 2010 WL 3618687 (N.D. Cal. Sept. 10, 2010) ........... 6, 7, 14

*Apple, Inc. v. Samsung Elecs. Co.*,
   Case No. CV 12-00630 LHK, 2012 WL 5632618 (N.D. Cal. Nov. 15, 2012) .......... 13, 14

*CANVS Corp. v. U.S.*,
   107 Fed. Cl. 100 (Fed. Cl. Oct. 25, 2012) ....................................................................... 8

*Dynetix Design Solutions Inc. v. Synopsys Inc.*,
   Case No. CV11-005973 PSG, 2012 WL 6019898 (N.D. Cal. Dec. 3, 2012) ..... 6, 7, 11, 15

*Google, Inc. v. Netlist, Inc.*,
   Case No. 08-4144 SBA, 2010 WL 1838693, at *2 (N.D. Cal. May 5, 2010) .................... 6

*Halo Elecs., Inc. v. Bel Fuse Inc.*,
   Case No. C07-06222 RMW, 2010 WL 3489593 (N.D. Cal. Sept. 3, 2010) .................... 14

*LG Elecs. Inc. v. Q-Lity Computer Inc.*,
   211 F.R.D. 360 (N.D. Cal. 2002) ..................................................................................... 7

*Nuance Communications, Inc. v. ABBYY Software House*,
   Case No. C 08-02912 JSW, 2012 WL 2427160 (N.D. Cal. June 26, 2012) ............. 6, 7, 14

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
   467 F.3d 1355 (Fed. Cir. 2006) ................................................................................. 6, 14

*Oracle America, Inc. v. Google, Inc.*,
   Case No. C 10-03561 WHA, 2011 WL 4479305 (N.D. Cal. Sept. 26, 2011) .................. 13

*SmartPhone Techs., LLC v. HTC Corp.*,
   Case No. 6:10cv580 LED, 2012 WL 1424173 (E.D. Tex. Mar. 16, 2012) ........................ 7

## OTHER AUTHORITIES

Patent Local Rule 3-1 ........................................................................................................... 13

Patent Local Rule 3-6 ..................................................................................................... passim

Defendant and Counterclaimant SPECIALIZED BICYCLE COMPONENTS, INC. ("Specialized") hereby opposes the Motion of Plaintiff ICON-IP PTY LTD ("Icon") for Leave to Amend Its Disclosure of Asserted Claims and Infringement Contentions.

## I. INTRODUCTION

Icon's Motion seeks to dramatically expand the scope of this case by adding another 53 models to the 33 models it originally accused of infringing. However, long prior to filing its contentions, Icon was in possession of documents depicting virtually all of the additionally accused models. These documents include excerpts from Specialized's 2008 product catalog, Specialized's 2009 website and a printout from an internet archive website, known as the Wayback Machine, that allows access to previous versions of Specialized's website. Incredibly, Icon's motion makes no mention of these excerpts and instead alleges that the additional models were "newly discovered." (Mot. at 4:3.) However, these documents in Icon's possession show otherwise.

Icon attempts to excuse lack of diligence by suggesting that Specialized's recent production of catalog pages triggered an investigation of the new models. (Mot. at 8:10.) However, the documents that Icon already had in its possession depict the saddles in just the same way as in the more recently produced documents. Icon alleges that the newly accused models infringe "in the same manner as the previously-accused seat models." (Mot. at 8:11-12.) Thus, a simple review of the documents that Icon already had in its possession should have permitted it to make its infringement allegations. Indeed, Icon uses a single Specialized saddle in its contentions' claim charts to read the patent claims on all accused models, originally and additionally accused. In short, there is simply no excuse for this lack of diligence and Icon's motion should be denied on this basis.

Moreover, the Wayback Machine internet archive has numerous captures of Specialized's website from recent years, including pages from which Specialized's product catalogs of previous model years can be viewed. Thus, the Specialized 2008 and 2009 products catalogs depicting its saddles for those model years, while not currently available on the Specialized website, can be easily printed out from the Wayback website today. The

1   public accessibility of this website is demonstrated by the fact that months before it filed its
2   contentions, Icon used the Wayback website to print out a page from Specialized's website as
3   it existed on October 17, 2010, showing saddles that Specialized offered for sale through its
4   website at that time.  These 2008 and 2009 catalogs which have been, and are currently,
5   available for anyone to access on the Wayback website depict virtually all of the additionally
6   accused models.  Thus, in addition to the documents Icon itself had in its possession, anyone
7   could have easily obtained the necessary information on the additionally accused saddles
8   from a publicly available source.  This further demonstrates that Icon was not diligent in
9   making its infringement allegations.
10      Courts have repeatedly denied leave to amend to add accused products when the
11  products were publicly available before the original deadline for infringement contentions.
12  Specialized sells its bicycle saddles on the open market, and expends considerable effort and
13  expense to advertise and promote its products to the bicycle industry and general public.
14  Through easily accessible means such as Specialized's website, its widely distributed product
15  catalogs, the internet archive, and third party reviews of Specialized's saddles, it would have
16  been a trivial task for any interested person to learn about Specialized's current and previous
17  saddle models.  The public nature of the accused instrumentalities here also supports denial of
18  Icon's motion.

## II.  FACTUAL BACKGROUND

20      Icon served infringement contentions on November 28, 2012 in which it accused 31
21  products of infringing U.S. Patent No. 6,378,938 ("'938 patent") and 33 products (those same
22  31 models plus two more) of infringing U.S. Patent No. 6,254,180 ("'180 patent").  (LaValley
23  Decl., Ex. A at 3–4; Olson Decl., Ex. R [chart summarizing listings of accused saddles].)
24      Although Icon listed 33 accused models in the body of its contentions, the attached
25  claim charts used only a single model to read the claims on the accused models. On
26  December 11, 2012, Specialized sent a letter to Icon pointing out that the Northern District's
27  case law requires that a plaintiff who wishes to use representative claim charts must establish
28  / / /

*1* that the products in the charts are representative of all accused products, which Icon had not
*2* done. (LaValley Decl., Ex. B.)

*3* On December 31, 2012, Icon served amended contentions in which it deleted seven
*4* models from the list of accused '180 products and added two models to the list of accused
*5* products for both patents. (LaValley Decl., Ex. C at 3–4; Olson Decl., Ex. R [chart
*6* summarizing listings of accused saddles].) These contentions also included other changes,
*7* such as a statement that Icon does not assert infringement under the doctrine of equivalents,
*8* and changes in the claim charts that made a cursory attempt to account for some of the
*9* differences among the accused products. (Olson Decl., Ex. C at 5.) Icon did not seek leave
*10* from the Court for these amendments, as is required by the local rules, nor did it ever ask
*11* Specialized whether it would oppose a request for leave to amend.[1]

*12* On January 14, 2013, Specialized served its invalidity contentions and accompanying
*13* document production. The document production included the excerpts from catalogs that
*14* Specialized provides to its dealers. (Olson Decl., Ex. T [exemplary excerpt of dealer catalog
*15* as produced].) Along with these documents required by the patent local rules, Specialized
*16* also produced spreadsheets showing sales of the accused products pursuant to an agreement
*17* with Icon regarding preparation for an early mediation.

*18* On January 16, 2013, Icon's counsel sent an email to Specialized's counsel asking
*19* why the sales data only reflected sales for a few years, and stated that "[m]y client has
*20* information showing that many of the seats identified have been offered for sale since 2008."
*21* (Olson Decl., Ex. J [Email of Jan. 16, 2013 at 6:20 a.m. from C. Laney to D. Olson].)
*22* Specialized promptly responded that the spreadsheets showed sales for all of the accused
*23* models. (Olson Decl., Ex. K [Email of Jan. 16, 2013 at 1:15 p.m. from D. Olson to C.

---

*25* [1] Icon's Motion intimates that it was Specialized's responsibility to object to the
*26* amended contentions (Mot. at 5), that Icon's actions were simply an effort to "avoid
unnecessary motion practice" (Mot. at 7), and that putting Specialized on notice of intended
*27* amendments was sufficient to meet its obligations. (Mot. at 8.) Yet Rule 3-6 clearly states
that "Amendment of the Infringement Contentions . . . may be made ***only by order of the***
*28* ***Court*** upon a timely showing of good cause." N.D. Cal. Patent L.R. 3-6.

Laney].) Icon's counsel then sent Specialized's counsel the following four documents (hereinafter collectively "Icon's Accused Saddle Documents") that purportedly showed "that certain accused models were sold from 2008-2010:"

- Excerpts from Specialized's 2008 product catalog;
- Excerpts of a printout dated Nov. 27, 2009 from a page on Specialized's website showing Men's saddles;
- Printout dated Nov. 27, 2009 from a page on Specialized website showing Women's saddles; and
- Printout dated March 6, 2012 from Wayback Machine internet archive showing a page on Specialized's website of Oct. 17, 2010 showing saddles.

(Olson Decl., Exs. L-P [Email of Jan. 16, 2013 at 1:32 p.m. from A. LaValley to D. Olson and attachments].) Specialized's counsel responded the next day with an explanation why the documents Icon's counsel had sent were not inconsistent with the sales spreadsheets Specialized had provided. (Olson Decl., Ex. Q [Email of Jan. 17, 2013 from T. Goodson to A. LaValley].)

Counsel for the parties met and conferred on January 18, 2013 and agreed that Icon's counsel would send a list of additional model names for which it sought sales data. Specialized's counsel agreed to gather data for these additional models for the purposes of the mediation, but expressly reserved Specialized's right to argue that the additional models were not in the case. (Olson Decl., ¶ 10.) On January 21, 2013, Icon's counsel sent a five page list of additional models for which it requested sales figures. (LaValley Decl., Ex. D; *see also* Olson Decl., Ex. R [chart summarizing listings of accused saddles].)

On February 11, 2013, Icon indicated to Specialized for the first time that it intended to seek the Court's leave to amend its infringement contentions, and inquired whether Specialized would oppose that request. (LaValley Decl., Ex. E.) In a letter of February 14, 2013, Specialized requested a redline of all changes to the contentions Icon would seek leave to make, and an explanation of all facts that Icon would rely on to meet the good cause standard of Patent Local Rule 3-6. (LaValley Decl., Ex. F at 4–5.)

*1*         On March 6, 2013, Icon provided redlined contentions[2] in which it sought to add 40 models to the list of accused '180 products and 53 models to the list of accused '938 products. (LaValley Decl., Ex. H at 3–4; *see also* Olson Decl., Ex. R [chart summarizing listings of accused saddles].) In the accompanying letter, Icon set forth the facts on which it would rely to meet the good cause standard:

> In accordance with Patent Local Rule 3-6, we believe that our ***recent discovery of additional, infringing saddle models*** supports a finding of good cause.
>
> Upon inspection of the documents Specialized produced on January 14, 2013 and the images of the models included therein, we believe the additional models we wish to add to our infringement contentions infringe in the same manner as the models included in our initial contentions. The models shown in Bates Nos. SPEC000019-184 appear to have the same or a similar design as the models included in our initial infringement contentions. These models are no longer sold by ICON [sic – Specialized] on its website, and thus ***we were unaware of these models prior to service of our initial contentions***.

(LaValley Decl., Ex. G (emphasis added).)

        Yet this explanation that Icon was unaware of the models it seeks to add in the redlined contentions cannot be reconciled with Icon's correspondence of January 16, 2013, in which it attached Icon's Accused Saddle Documents. (Olson Decl., Exs. L–P [Email of Jan. 16, 2013 from A. LaValley to D. Olson and attachments].) Those documents depict nearly every model—48 out of 53—that Icon now seeks to add through its redlined contentions. (Olson Decl., Ex. S [chart comparing new models in redlined contentions to four documents from Icon's Jan. 16, 2013 email].)

        The only five models Icon seeks to add in the redlined contentions that were not shown in the four documents are the Alias SL, Toupe RBX Comp Gel, Toupe RBX Expert, Toupe SL Carbon, and Indie XC Sport Gel. As to the Alias SL, Specialized is unaware of any saddle it has sold under that name and Icon's counsel has recently indicated that the

---

[2] The redlined contentions that Icon sent on March 6, 2013 did not include exhibits. Specialized assumes that Icon seeks leave to amend the exhibits of its contentions to the version of the exhibits that it sent on December 31, 2012. Specialized does not oppose this request.

-6-     Opp. to Icon's Mot. to Amend Contentions
            Case no. CV 12-3844 JST

1 identification of that model was a typographical error. (Olson Decl. ¶ 11.) Although Specialized believes the other four saddles and information about them were available well before Icon's deadline to serve infringement contentions, Specialized is willing to stipulate that Icon can add these four models. Specialized's willingness to so stipulate is in order to simplify the issues in this motion. Thus, the only saddles in issue are saddles expressly listed and depicted in the Icon Accused Saddle Documents from 2008, 2009 and March 2012.

### III. LEGAL STANDARD

Amendment of infringement contentions is governed by Rule 3-6 of this District's Patent Local Rules, which provides that infringement contentions may be amended "only by order of the Court upon a timely showing of good cause." The Rule lists three "[n]on-exhaustive examples of circumstances that may, absent undue prejudice to the non-moving party, support a finding of good cause":

> (a) A claim construction by the Court different from that proposed by the party seeking amendment;
> (b) Recent discovery of material, prior art despite earlier diligent search; and
> (c) *Recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions*.

Patent L.R. 3-6 (emphasis added).

The party seeking to amend its contentions bears the burden of establishing its diligence. *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006); *Nuance Communications, Inc. v. ABBYY Software House*, Case No. C 08-02912 JSW, 2012 WL 2427160, at *1 (N.D. Cal. June 26, 2012). "In considering the party's diligence, the critical question is whether the party 'could have discovered [the new information] earlier had it acted with the requisite diligence.'" *Dynetix Design Solutions Inc. v. Synopsys Inc.*, Case No. CV11-005973 PSG, 2012 WL 6019898, at *2 (N.D. Cal. Dec. 3, 2012) (quoting *Google, Inc. v. Netlist, Inc.*, Case No. 08-4144 SBA, 2010 WL 1838693, at *2 (N.D. Cal. May 5, 2010)).

If Icon cannot demonstrate diligence, there is no need to consider whether Specialized would be prejudiced by the proposed amendment. *See O2 Micro*, 467 F.3d at 1368; *Acer*,

2010 WL 3618687, at *5. "Unlike the liberal policy for amending pleadings, the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the 'shifting sands' approach to claim construction." *Acer, Inc. v. Tech. Properties Ltd*, Case No. 5:08-cv-00877 JF, 2010 WL 3618687, at *4 (N.D. Cal. Sept. 10, 2010) (quoting *LG Elecs. Inc. v. Q-Lity Computer Inc.*, 211 F.R.D. 360, 367 (N.D. Cal. 2002)).

Courts have repeatedly denied leave to amend to add accused products when the products or information about them was publicly available before the original deadline for infringement contentions. For example, in *Acer*, the patentee sought to amend its infringement contentions after dissolution of a stay that was entered due to reexamination proceedings in the Patent Office. The amendments sought to add claims and accused products, at least some of which had been on sale since before the initial infringement contentions were served. *Acer*, 2010 WL 3618687, at *2. The Court denied the motion, noting that the patentee had not identified in its motion any infringement information that was not known or available to it before the stay was imposed: "The record indicates only that after the stay was dissolved, TPL re-investigated evidence that already was available and determined that it wished to amend its infringement contentions. Characterizing this course of conduct as 'diligence' under the Patent Local Rules would eviscerate that requirement." *Id.* at *4-5.

Similarly, in *Dynetix*, the Court denied leave to add another accused instrumentality when information about that product had been available on the defendant's website for several years. *Dynetix*, 2012 WL 6019898, at *2. As another example, in *Nuance*, the Court denied a motion to amend infringement contentions to add products because the products had been publicly released years earlier. *Nuance*, 2012 WL 2427160, at *1. *See also SmartPhone Techs., LLC v. HTC Corp.*, Case No. 6:10cv580 LED, 2012 WL 1424173, at *3 (E.D. Tex. Mar. 16, 2012) (permitting addition of accused products that were not yet available when original contentions were served but denying leave as to models that were released before the deadline). Synthesizing this case law, a recent decision from the Court of Federal Claims noted that "where the information that a plaintiff relies upon to support

amendment was publicly available prior to the time for filing plaintiff's infringement contentions, a court should be reluctant to permit amendment." *CANVS Corp. v. U.S.*, 107 Fed. Cl. 100, 107 (Fed. Cl. Oct. 25, 2012).

### IV. ARGUMENT

**A. Icon Cannot Meet the Good Cause Standard Because Icon Had the Information About the Models Icon Seeks to Add and Such Information Was Readily Available**

    **1. Prior to its contentions, Icon had documents depicting the new models**

Icon cannot meet the good cause standard of Rule 3-6 including the specified example of good cause when there has been "[r]ecent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions." Patent L.R. 3-6(c). The situation here is the antithesis of that scenario. Here, Icon, in fact, was in possession of all the information it needed to make its infringement allegations well in advance of the deadline for the infringement contentions.

As shown by the correspondence of January 16, 2013, Icon was in possession of excerpts of the 2008 Specialized product catalog (Olson Decl., Ex. M), and excerpts of the Specialized 2009 website that were printed out in November 2009. (*Id.*, Exs. N & O.) In addition, Icon had an excerpt from the Wayback website printed out in March 2012 of a page of the Specialized website from October 17, 2010 showing saddles. (*Id.*, Ex. P.) These Icon Accused Saddle Documents demonstrate Icon knew of all the saddles now in issue well in advance of the November 28, 2012 deadline for infringement contentions. (*Id.*, Ex. S [chart comparing new models in redlined contentions to four documents from Icon's Jan. 16, 2013 email].) Indeed, based on the print dates on the documents, it appears that Icon has been monitoring Specialized's saddle offerings for several years—long before it filed suit in July 2012, and long before its contentions were due. (*Id.*, Ex. N & O (showing print date stamps in the upper left corner of Nov. 27, 2009).)

While the public availability of information about the saddles Icon seeks to add is reason enough to deny leave to amend under the case law discussed above, the facts of this

*1* case present far more compelling grounds to deny leave to amend. Here, it is not merely *2* hypothetical that a diligent person could have accessed information about Specialized's *3* saddles. Rather, the inescapable conclusion from the correspondence of January 16, 2013 *4* (*Id.*, Exs. L–P) is that Icon actually knew about these sources of information, including the *5* product catalogs, Specialized's website, and the internet archive. In these circumstances, *6* Icon simply cannot meet its burden to show good cause for the amendment.

*7*       **2.**     **The information about the new models was easily accessible from a single**
*8*            **source**

*9*       The Internet Archive Wayback Machine is a website located at http://web.archive.org/ *10* that allows people to visit archived versions of websites. (*Id.* ¶ 15.) Visitors can type in an *11* address of the website of which they would like to see previous versions, and then begin *12* viewing archived versions. (*Id.*) Users can also specify the date of the archived version they *13* would like to view. (*Id.*) Typing in "www.specialized.com" into the Wayback Machine *14* allows visitors to view archived versions of the www.specialized.com website. Users can *15* click on links in the archived website, similar to navigating a regular, current website. The *16* documents in Exhibits U-W to the Olson declaration were all obtained by entering *17* "www.specialized.com" into the Internet Archive Wayback Machine and navigating within *18* the archives. (*Id.*)

*19*       The Wayback website allows access to archived versions of Specialized web pages in *20* which its previous product catalogs and offerings can be viewed. Importantly here, the 2008 *21* and 2009 Specialized product catalogs are both accessible on the Wayback website (*id.* *22* ¶¶ 16–17, Ex. W), as are web pages showing the saddles Specialized was offering for sale *23* through its website at various points in time, such as October 17, 2010. (*Id.*, Ex. P.) The web *24* pages on which the 2008 and 2009 catalogs are accessible were archived in September 28, *25* 2008 and January 21, 2009, respectively, and they remain currently accessible. (*Id.*, Exs. U– *26* V.) As shown in the comparative chart, the 2008 product catalog (*id.*, Ex. M) and October *27* / / /
*28* / / /

17, 2010 archived web page (*id.*, Ex. P) depict virtually every new model now in issue. (*Id.*, Ex. S).[3]

Thus, one could readily access the necessary information about the newly accused models from a simple, single, public source—the Wayback website. As a testament to the site's accessibility, in March 2012, Icon itself accessed this website and printed out excerpts from the Specialized website of 2010. (*Id.*, Ex. P.) The ready public access to information on the Specialized saddles is further demonstration of Icon's lack of diligence.

### 3. The Specialized saddles are widely and publicly available

In addition to the Wayback website, Specialized saddles are widely sold, promoted and publicized. Had Icon been diligent, it could have discovered whatever information it was seeking on any particular Specialized saddle from a variety of sources.

Specialized has been in operation for almost 40 years and is well known in the market for high end bicycles and bicycle related products. (McCrindle Decl., ¶ 2.) Specialized sells its bicycle saddles on the open market in all 50 states, and expends considerable resources to advertise and market its saddles. (*Id.* ¶¶ 3–9.) These efforts include Specialized's website, which was launched in 1996, and which currently receives over one million unique visits each month. The website shows Specialized's product offerings for the current model year, including saddles, and allows customers to purchase the products through Specialized's site. (Patrizi Decl., ¶¶ 2–3.) Specialized's website also includes an "Outlet" through which Specialized sells saddles from previous model years, to the extent they are still in Specialized's inventory. (*Id.* ¶ 4.) There is also an archive page on Specialized's own website, which shows what saddle models were sold on stock version of Specialized's bicycles of previous model years. (*Id.* ¶ 6.)

Specialized prints hundreds of thousands of product catalogs of its saddles, which it sends to its dealers nationwide for distribution to potential consumers. (McCrindle Decl., ¶ 6-

---

[3] The only newly accused models not shown in either Exhibit M or P are the Indie XC and Phenom Team. (Ex. S.)

-11- Opp. to Icon's Mot. to Amend Contentions
Case no. CV 12-3844 JST

7.) These product catalogs are freely available to the public by simply visiting Specialized's dealers, of which there are over 1,100 in the U.S., and more than 20 in the San Francisco Bay Area alone. (*Id.* ¶ 4.) Product catalogs can also be accessed on Specialized's website, and the internet archive of Specialized's site includes Specialized's catalogs from earlier model years, including at least 2008 and 2009. (*Id.* ¶ 7; Patrizi Decl., ¶ 5; Olson Decl., ¶¶ 16–17, Exs. U–W.)

Each year, Specialized conducts a product launch to introduce to the market the products offerings of the new model year. As part of these launches, Specialized makes its new products available to media outlets for testing, and those media outlets then publish reviews of the products. (McCrindle Decl., ¶ 5.) These reviews are yet another very public source of information about what saddle models Specialized is marketing or has marketed in the past. (*See, e.g.*, *id.* at Ex. X.)

Thus, the widespread public nature of the accused instrumentalities provide further support for the denial of Icon's motion for lack of diligence.

**B.     Icon's Arguments for Good Cause Are Unpersuasive**

Icon's Motion does not cite any authority supporting amendment of infringement contentions to add products that the moving party was aware of before it served its original contentions. Indeed, the Motion steadfastly ignores this crucial fact, and maintains that it was Specialized's production of dealer catalogs that first made Icon aware of the additional models. (Mot. at 5. *See also* LaValley Decl., Ex. G (stating as the good cause for the proposed amendments that "we were unaware of these models prior to service of our initial contentions.").) But the documented correspondence plainly shows otherwise.

The discussion of diligence in Icon's Motion focuses entirely on Icon's actions after receiving Specialized's documents, but those activities say nothing about "the critical question [of] whether the party 'could have discovered [the new information] earlier had it acted with the requisite diligence.'" *Dynetix*, 2012 WL 6019898, at *2. Icon's Motion provides no explanation of what Icon did to investigate its claims and Specialized's products

/ / /

1 before service of its contentions, and why the information about the saddles they now wish to
2 add was not discovered through those efforts.
3       Moreover, Icon does not assert that the dealer catalogs that Specialized produced
4 provided critical information that was missing from the documents Icon already had, and
5 there is no apparent reason why they would have. Icon's Motion says that its investigation of
6 the additional saddles involved "noted similarities between their shape and design to that of
7 the already-accused models." (Mot. at 5.) But the photos in the dealer catalogs that
8 Specialized produced that would have allowed such a visual comparison are very similar to
9 the photos in the materials Icon already had. For example, the graphic below and to the left is
10 a reproduction from the 2008 catalog that Icon sent on January 16, 2013 (Olson Decl., Ex. M
11 at 2) showing the Alias, one of the models Icon seeks to add through this Motion (not the
12 Alias SL model that was a typographical error). The graphic below and to the right is a
13 reproduction from a dealer catalog that Specialized produced (Olson Decl., Ex. T at 9):




27 This demonstrates that there was nothing of any significance disclosed in the catalog sheets
28 recently produced by Specialized that was not disclosed in the Icon Accused Saddle

-13-    Opp. to Icon's Mot. to Amend Contentions
Case no. CV 12-3844 JST

1  Documents. Thus, the recent production is a red herring that does not excuse Icon's lack of
2  diligence.
3        Icon's Motion repeatedly asserts, in a conclusory fashion, that the saddles it seeks to
4  add are similar to those in its original contentions. (Mot. at 4, 8, 9.) But aside from the
5  Toupe RBX models which are now not in issue, Icon does not explain which newly accused
6  product is similar to which previously accused product and why listing 33 models should
7  permit the inclusion of 53 others. Many of the saddles Icon seeks to add—such as the Alias,
8  BG Comfort, BG2 Sport, Dolce, Fomat, Indie, Rival, Sonoma, and Tritip Gel—are from
9  entirely different product families than any product in Icon's original contentions. (Olson
10 Decl., Ex. R [chart comparing listings of accused products].)
11       Since model year 2007, Specialized has sold over a hundred different models of
12 bicycle saddles. Specialized should not have to conduct a review of its products going back
13 several years and attempt to guess which of its products are similar enough that plaintiff
14 intended to name them as well. The patent local rules make it the *plaintiff's* responsibility to
15 identify the accused products, and require that "[t]his identification shall be as specific as
16 possible. Each product, device, and apparatus shall be identified by name or model number,
17 if known." Patent L.R. 3-1(b). Icon argues that its infringement theory is the same for the
18 models it seeks to add as it was for those previously identified (Mot. at 4, 8), but courts in the
19 Northern District have rejected these kinds of attempts to skirt the specific identification of
20 models required by the patent local rules. *See Oracle America, Inc. v. Google, Inc.*, Case No.
21 C 10-03561 WHA, 2011 WL 4479305, at *2 (N.D. Cal. Sept. 26, 2011) ("Even with the
22 intention of relying on circumstantial evidence to prove the similarity of many accused
23 devices, Oracle could have and should have specifically identified all such accused devices.
24 Oracle does not claim that the names of the other Android devices were not known to it in
25 April 2011 [when its contentions were served].")
26       Icon's Motion relies on *Apple, Inc. v. Samsung Elecs. Co.*, Case No. CV 12-00630
27 LHK, 2012 WL 5632618 (N.D. Cal. Nov. 15, 2012), in which the court permitted Apple to
28 add claim charts that had been accidentally omitted when it was uploading its documents for

-14-    Opp. to Icon's Mot. to Amend Contentions
Case no. CV 12-3844 JST

service. *Id.* at *5. Unlike Apple, however, Icon does not allege accidental omission. Icon's request to add 53 models to its previous list of 33 models cannot reasonably be characterized as the result of an administrative error. Icon also cites *3Com Corp. v. D-Link Sys., Inc.*, 2007 WL 949599 (N.D. Cal. Mar. 27, 2007), but fails to mention that the Court was granting leave to amend *preliminary* infringement contentions and its decision was based in part on the distinction between preliminary contentions and final contentions. *Id.* at *7. The patent local rules were amended in 2008 to eliminate the concept of "preliminary" and "final" contentions in favor of a single round of contentions.

The Motion also emphasizes the early stage of this litigation, but this factor goes only to the analysis of whether Specialized would be prejudiced by the proposed amendments. Because Icon has not carried its burden to establish that it was diligent in discovering the models it seeks to add, it is irrelevant whether Specialized would be prejudiced by the amendment. *O2 Micro*, 467 F.3d at 1368; *Nuance*, 2012 WL 2427160, at *1; *Acer*, 2010 WL 3618687, at *5.[4]

C. **Permitting Icon to Amend Would Violate the Principles Underlying the Patent Local Rules**

Even at this early stage of the case, Icon has already provided several lists of accused products that make significant changes to the previous lists. (Olson Decl., Ex. R [chart summarizing listings of accused saddles].) These changes include both additions and subtractions, but far more models have been added than deleted. This is precisely the kind of shifting sands approach to patent litigation that this District's patent local rules aim to prevent. *Acer*, 2010 WL 3618687, at *4. Icon should not be permitted to continually redraw

/ / /

---

[4] Icon also cites *Halo Elecs., Inc. v. Bel Fuse Inc.*, Case No. C07-06222 RMW, 2010 WL 3489593 (N.D. Cal. Sept. 3, 2010), though both the Westlaw and Lexis versions of that decision instruct that it is "Not For Citation." In any event, *Halo*'s statement that "[t]here is a *modest* degree of flexibility, at least near the outset" does not support Icon's request to more than double the number of accused products in this litigation.

-15- Opp. to Icon's Mot. to Amend Contentions
Case no. CV 12-3844 JST

1. the boundaries of this case. "Like all patent cases, this case must narrow as it moves forward,
2. not expand." *Dynetix*, 2012 WL 6019898, at *3.

## V. CONCLUSION

The Court should deny Icon's motion to amend its infringement contentions to more than double the number of accused products in this case, because Icon has not and cannot meet its burden to show diligence for its amendments. However, as noted above, Specialized does not oppose Icon's request to delete accused models, to replace the claim charts of its contentions with the exhibits Icon served on December 31, 2012, and to enter the changes in Sections C. and E. of the redlined contentions.

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: April 11, 2013  By: /s/Darrell L. Olson
         Darrell L. Olson
         Edward A. Schlatter
         Timothy J. Goodson
     Attorneys for Defendant/Counterclaimant
     SPECIALIZED BICYCLE COMPONENTS, INC.

15194346/041013