MARTIN L. FINEMAN, CA State Bar No. 104413
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street
San Francisco, California 94111-6533
Telephone: (415) 276-6500
Facsimile: (415) 276-6599
Email: martinfineman@dwt.com

RAYMOND P. NIRO
FREDERICK C. LANEY
ASHLEY E. LaVALLEY
NIRO, HALLER & NIRO
181 W. Madison, Suite 4600
Chicago, Illinois  60602
Phone: (312) 236-0733
Fax: (312) 236-3137
E-mail: rniro@nshn.com
E-mail: laney@nshn.com
E-mail: alavalley@nshn.com
**Attorneys for Plaintiff ICON-IP PTY LTD.**

Attorneys for Plaintiff ICON-IP PTY LTD.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ICON-IP PTY LTD.<br><br>    Plaintiff,<br><br>  v.<br><br>SPECIALIZED BICYCLE COMPONENTS, INC.,<br><br>    Defendant. | Case No:  12-cv-03844<br><br>**PLAINTIFF ICON'S OPENING CLAIM CONSTRUCTION BRIEF** |

# TABLE OF CONTENTS

I.     INTRODUCTION AND BACKGROUND ..................................................... 1

II.    LEGAL STANDARDS GOVERNING CLAIM CONSTRUCTION ............................. 3

III.   CONSTRUCTION OF DISPUTED TERMS ................................................. 6

       A.    '180 Patent ................................................................................ 6

             1.    "Hinge" Terms .................................................................. 6

             2.    "Stop Means" Terms ....................................................... 12

       B.    '938 Patent .............................................................................. 15

             1.    "Permanently Transverse" Terms ............................... 15

             2.    "Abutment Means" Terms ............................................. 19

IV.    CONCLUSION ................................................................................ 23

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*ActiveVideo Networks, Inc. v. Verizon Communs., Inc.*,
  649 F.3d 1312 (Fed. Cir. 2012)..................................................................8

*Acumed C v. Stryker Corp.*,
  483 F.3d 800 (Fed. Cir. 2007)..................................................................14

*Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*,
  340 F.3d 1298 (Fed. Cir. 2003)..................................................................4

*Apex Inc. v. Raritan Computer, Inc.*,
  325 F.3d 1364 (Fed. Cir. 2003)..................................................................3

*Asyst Techs., Inc. v. Empak, Inc.*,
  268 F.3d 1364 (Fed. Cir. 2001)................................................................13

*Aventis Pharms. Inc. v. Amino Chems. Ltd.*,
  715 F.3d 1363 (Fed. Cir. 2013)................................................................16

*Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*,
  334 F.3d 1294 (Fed. Cir. 2003)..................................................................3

*Chicago Bd. Options v. Intern. Securities Exchange*,
  677 F.3d 1361 (Fed. Cir. 2012)................................................................12

*Cole v. Kimberly-Clark Corp.*,
  102 F.3d 524 (Fed. Cir. 1996)................................................................22

*Comark Communs., Inc. v. Harris Corp.*,
  156 F.3d 1182 (Fed. Cir. 1998)..................................................................4

*Desper Prods., Inc. v. QSound Labs*,
  157 F.3d 1325 (Fed. Cir. 1998)..................................................................5

*Gemstar-TV Guide Int'l, Inc. v. ITC*,
  383 F.3d 1352,1366 (Fed. Cir. 2006)........................................................17

*Haemonetics Corp. v. Baxter Healthcare Corp.*,
  607 F.3d 776 (Fed. Cir. 2010)............................................................8, 10

*Int'l Visual Corp. v. Crown Metal Mfg. Co.*,
  991 F.2d 768 (Fed. Cir. 1993)..................................................................5

*Kara Tech. Inc. v. Stamps.com Inc.*,
  582 F.3d 1341 (Fed. Cir. 2009)............................................................7, 10

*Laryngeal Mask Co. Ltd. v. Ambu A/S*,
    618 F.3d 1367 (Fed. Cir. 2010)................................................................................4

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995)..............................................................................3, 5

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (Fed. Cir. 2008)................................................................................8

*Panduit Corp. v. Dennison Mfg. Co.*,
    810 F.2d 1561 (Fed. Cir. 1987)................................................................................5

*Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*,
    170 F.3d 1373 (Fed. Cir. 1999)................................................................................5

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc) .................................................... passim

*Read Corp. v. Portec, Inc.*,
    970 F.2d 816 (Fed. Cir. 1992)..................................................................................5

*Rembrandt Data Techs., LP v. AOL, LLC*,
    641 F.3d 1331 (Fed. Cir. 2011)..............................................................................16

*SRI Int'l v. Matsushita Elec. Corp.*,
    775 F.2d 1107 (Fed. Cir. 1985)................................................................................4

*TI Grp. Auto. Sts. v. VDO N. Am.*,
    375 F.3d 1126 (Fed. Cir. 2004)..............................................................................22

*Transmatic, Inc. v. Gulton Indus., Inc.*,
    53 F.3d 1270 (Fed. Cir. 1995)..................................................................................4

*TriMed, Inc. v. Stryker Corp.*,
    514 F.3d 1256 (Fed. Cir. 2008), *rev'd on other ground*, 608 F.3d 1333 (Fed. Cir.
    2010) ..................................................................................................................20, 21

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996).........................................................................3, 4, 5

*Wenger Mfg., Inc. v. Coating Machinery Sys., Inc.*,
    239 F.3d 1225 (Fed. Cir. 2001).......................................................................13, 14

STATUTES

35 U.S.C. § 112................................................................................................................17

35 U.S.C. § 112(f)..................................................................................................... passim

35 U.S.C. § 112 ¶6 .............................................................................................12, 19, 22

**OTHER AUTHORITIES**

Patent L.R. 4-1 ................................................................................................................2

Patent L.R. 4-2 ................................................................................................................2

## I.      INTRODUCTION AND BACKGROUND

In this suit, Icon IP Pty. Ltd. ("Icon") asserts that Specialized Bicycle Components, Inc. ("Specialized") has infringed claims 1, 3, 4, 5, 6, 12, 14, 15, 17, 21, and 22 of U.S. Patent No. 6,378,938 (Ex. A, "the '938 patent") and claims 1, 2, 3, 5, 11, 12, 13, and 14 of U.S. Patent No. 6,265,180 (Ex. B, "the '180 patent").  The accused products include various "Body Geometry" branded bicycle seats manufactured and sold by Specialized.

Paul Damian Nelson is the sole inventor of the patents-in-suit.  He has obtained patents for his bicycle seating technology in countries throughout the world, including Australia, India, Malaysia, South Africa, Brazil, Indonesia, and countries in Europe.  The '938 patent has a priority date of May 31, 1993.  It issued in April 30, 2002.  It is generally directed towards a cycle seat that is dimensioned to support a rider's ischial bones while providing for minimal contact between the seat and the gluteus maximus muscles and other surrounding tissue and muscles. Ex. A, '938 patent. This invention is an improvement over the prior art because the design of the seat allows a rider to provide maximum power or efficiency when pedaling by primarily supporting anatomy adjacent to the ischial bone areas, as well as reduces soreness in the soft tissue and muscles of the seating anatomy outside the ischial bone areas because of reduced pressure to these areas.  *Id.*

The '180 patent is an improvement or modification to the seat disclosed in the '938 patent. Ex. B, '180 patent. The '180 patent claims priority to an Australian patent application filed on December 9, 1996.  It issued on July 3, 2001.  The invention of the '180 patent claims a support system including hinges to allow the support portions of the bicycle seat to move independently with respect to one another in an arcuate fashion during riding.  The advantages of the invention include increased comfort and energy return to the rider while pedaling the bike. *Id.*  Friction is reduced because of the movement of the support portions, which in turn reduces

chaffing and other discomfort caused by riding. *Id.*   The '180 patent was the subject of reexamination proceedings in 2005 through 2007.   The claims of the '180 patent survived reexamination substantially unchanged.   Claim one was merely amended to clarify that at least one hinge must exist between each of the rear support portions and the front portion. Ex. B, '180 Patent, Reexamination Certificate.

Pursuant to Patent L.R. 4-1, the parties exchanged claim terms to be construed on April 19, 2013.  Proposed claim constructions were exchanged on May 10, 2013.  After meeting and conferring pursuant to Patent L.R. 4-2, the parties selected the following ten terms for construction:

| Claim Term | In Patent No. | Appears in Claim No(s): |
|---|---|---|
| "at least one hinge between each of the first and second portions and the front portion for allowing each of the first and second support portions to undergo substantially independent arcuate movement" | '180 Patent | 1 |
| "a hinge for allowing each of the first and second support portions to undergo substantially independent movement arcuate relative to one another and the nose portion" | '180 Patent | 12 |
| "a hinge allowing the two separate portions to undergo substantially independently movement" | '180 Patent | 14 |
| "stop means for limiting the amount of movement of the first and second support portions" | '180 Patent | 12 |
| "stop means is provided for limiting movement of the two support portions" | '180 Patent | 22 |
| "permanently transverse with respect to the longitudinal axis of the bicycle when the support means couples the seat to the bicycle so that without other supports, it is not possible to permanently site on the [inclined surface/abutment means] with the backbone of the [rider/person] arranged generally vertically" | '938 Patent | 1, 5, 11, 12, 13, 14 |
| "an inclined surface forming abutment means for receiving a portion of a rider's anatomy which is adjacent to at least one of the rider's ischial bones" | '938 Patent | 1 |

| "an inclined surface forming abutment means against which a rider's tissue can abut" | '938 Patent | 5, 11 |
| "an inclined surface forming abutment means for receiving substantially only that portion of a person's seating anatomy which covers at least a part of one of the person's ischial bones thereof" | '938 Patent | 12 |
| "an inclined surface [portion] forming abutment means intended for receiving a portion of a person's seating anatomy which covers at least a part of one of the person's ischial bones thereof" | '938 Patent | 13, 14 |

## II.    LEGAL STANDARDS GOVERNING CLAIM CONSTRUCTION

Claim construction is an issue of law for the Court to decide.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995).  It is a "bedrock principle" of patent law that "the claims of a patent define the invention to which the patentee is entitled the right to exclude."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc).  In construing claims, the analytical focus must begin and remain centered on the language of the claims since those words, selected by the inventor**,** define the scope of the claim.  *Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1298 (Fed. Cir. 2003).  The claims themselves provide substantial guidance as to the meaning of particular claim terms quite apart from the written description and the prosecution history.  *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Thus, the Court must start its analysis with the "strong presumption" that claims must be given their plain and ordinary meaning as depicted in the claim itself.  *Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1371 (Fed. Cir. 2003).

The objective baseline from which to begin claim interpretation is to inquire into how a person of ordinary skill in the art would understand the claim.  *Phillips*, 415 F.3d at 1313.  The context in which a term is used in the claim can be highly instructive.  However, the claims do not stand alone; they are part of "a fully integrated written instrument."  *Markman*, 52 F.3d at

978.   Thus, claims "must be read in view of the specification, of which they are a part." *Vitronics*, 90 F.3d at 1582.   Indeed, the party challenging the plain meaning has the burden of providing this Court with evidence to demonstrate that the inventor had ***clear*** intention to re-define the disputed terms in a different manner than how they are ordinarily understood by one skilled in the art.   *Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.,* 340 F.3d 1298, 1308 (Fed. Cir. 2003).

"In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words. … In such circumstances, general purpose dictionaries may be helpful." *Phillips*, 415 F.3d at 1314 (internal citation omitted).

When interpreting a claim in light of the specification, it is important to remember that limitations from the specific embodiments of a patent cannot be read as limitations into the claims.  *Comark Communs., Inc. v. Harris Corp.,* 156 F.3d 1182, 1186 (Fed. Cir. 1998) ("It does not follow that limitations from the specification may be read into the claims."). This is true even when a patent discloses only one embodiment in the specification.  *Laryngeal Mask Co. Ltd. v. Ambu A/S*, 618 F.3d 1367, 1372 (Fed. Cir. 2010).

> If everything in the specification were required to be read into the claims, or if structural claims were to be limited to devices operated precisely as a specification-described embodiment is operated, there would be no need for claims.... It is the claims that measure the invention.

*SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985).   Thus, while the specification may be used to interpret the claims, it may not be used as a source for adding extraneous limitations.  *Transmatic, Inc. v. Gulton Indus., Inc.*, 53 F.3d 1270, 1277-78 (Fed. Cir. 1995).

Of course, it is improper to rewrite the claims, either by disregarding words that are present or adding others that are not. *Panduit Corp. v. Dennison Mfg. Co*., 810 F.2d 1561, 1576 (Fed. Cir. 1987). Claim construction is not claim re-definition: Courts may not provide greater precision of the claim language than the patentee used (i.e. words not present in the claims cannot suddenly become claim limitations). *See Int'l Visual Corp. v. Crown Metal Mfg. Co.*, 991 F.2d 768, 771 (Fed. Cir. 1993).

In addition to consulting the specification, the Federal Circuit has explained that a court "should also consider the patent's prosecution history" or complete record of the proceedings in the patent office. *Markman*, 52 F.3d at 980. The prosecution history may often demonstrate how the inventor and the Patent Office understood the invention and demonstrate if the inventor further explained (or even limited) the invention. *Vitronics*, 90 F.3d at 1582-83. However, it must be read in context. Not every comment by an applicant limits or narrows a claim. *Read Corp. v. Portec, Inc.,* 970 F.2d 816, 824 (Fed. Cir. 1992). Unless the intrinsic evidence contains a ***clear and deliberate*** disavowal of its scope apart from descriptions of particular embodiments, the term must be given its plain and ordinary meaning. *Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 170 F.3d 1373, 1377 (Fed. Cir. 1999).

The Court may also rely upon extrinsic evidence, which consists of evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries and learned treatises. *Phillips*, 415 F.3d at 1317. However, extrinsic evidence, including expert testimony, may not be used to vary or contradict the otherwise unambiguous meaning of a claim term, *Desper Prods., Inc. v. QSound Labs*, 157 F.3d 1325, 1333 (Fed. Cir. 1998), and is less significant than intrinsic evidence in determining the proper claim construction. *Phillips*, 415 F.3d at 1317.

1     As is shown in detail below, Icon's proposed constructions for the disputed terms are

2 dictated by the intrinsic record.

3 **III.    CONSTRUCTION OF DISPUTED TERMS**

4     **A.     '180 Patent**

5         **1.     "Hinge" Terms**

| Terms | Icon's Proposed Construction | Specialized Proposed Construction[1] |
|---|---|---|
| "at least one hinge between each of the first and second portions and the front portion for allowing each of the first and second support portions to undergo substantially independent arcuate movement" (Claim 1) | Icon contends that this claim term requires no construction. However, if the Court determines this claim requires construction, Icon contends the construction should be: "at least one flexible area separating each of the support portions from the nose to allow flexing to occur between each of the first and second support portions and the front portion so that each of the first and second support portions undergo substantially independent arcuate movement" | The construction for each of Term Nos. 1-3 is: "a specific localized region between each of the support portions and the nose/front portion that flexes during pedaling to allow each of the support portions to independently rotate in an arc about the region without interference or significant dampening, while the nose/front portion is held substantially still" |
| "a hinge for allowing each of the first and second support portions to undergo substantially independent movement arcuate relative to one another and the nose | Icon contends that this claim term requires no construction. However, if the Court determines this claim requires construction, Icon contends the construction should be: "a flexible area separating each of the support portions from the nose to allow flexing between each of the support portions and the nose so that each of the first and second | |

---

[1] Icon has included Specialized's proposed constructions as they appear in Exhibit B to the parties' Joint Claim Construction Statement.  (D.I. No. 52).

| | | |
|---|---|---|
| portion" (Claim 12) | support portions may undergo substantially independent arcuate movement relative to one another and the nose portion" | |
| "a hinge allowing the two separate support portions to undergo substantially independently movement" (Claim 14) | Icon contends that this claim term requires no construction. However, if the Court determines this claim requires construction, Icon contends the construction should be:<br><br>"a flexible area separating each of the support portions from the nose to allow flexing between each of the support portions and the nose so that the two separate support portions may undergo substantially independent movement" | |

The parties agree that the hinge is located between each of the support portions and the front/nose portion and allow some type of flexure, however the parties dispute whether the hinge must be a specific or localized area that flexes and also disagree on the character and extent of the movement of the support portions.

Specialized's proposed construction violates the most fundamental canon of claim construction, not to import limitations into the claims. *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009). Specifically, Specialized asks that the Court limit the hinge to a "specific" and "localized" region. Nothing in the plain language of the claims or in the intrinsic record supports this limitation. Further, Specialized erroneously adds that the independent movement allowed by the hinge is "without interference or significant dampening, while the nose/front portion is held substantially still." This proposed construction does not provide clarity to the claim language, but instead introduces uncertainty through the use of the ambiguous terms "interference," "significant dampening" and "substantially still." Moreover, Specialized improperly proposes that the three hinge terms found in claims 1, 12, and 14 be

1    construed the same, disregarding the fundamental differences of each claim.  The Federal Circuit

2    has repeatedly recognized that this is not proper.  *See, e.g., Haemonetics Corp. v. Baxter*

3    *Healthcare Corp.*, 607 F.3d 776, 781 (Fed. Cir. 2010) (holding that claims should not be

4    construed so as to render physical structures and characteristics described in those claims

5    superfluous, but rather "with an eye toward giving effect to all of their terms").

6          On the other hand, Icon contends that the "hinge terms" are unambiguous and require no

7    further construction.  The patentee never represented them as having a meaning different from

8    their plain and ordinary meaning in the specification nor represented that they should have a

9    different or narrower meaning that the plain meaning to overcome prior art during the

10   prosecution of the patent-in-suit.   "[D]istrict courts are not (and should not be) required to

11   construe every limitation present in a patent's asserted claims."  *O2 Micro Int'l Ltd. v. Beyond*

12   *Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) (citing *Biotec Biologische*

13   *Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1349 (Fed. Cir. 2001) and

14   *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) (Claim construction

15   "is not an obligatory exercise in redundancy.")); *see also ActiveVideo Networks, Inc. v. Verizon*

16   *Communs., Inc.*, 649 F.3d 1312, 1326 (Fed. Cir. 2012) ("The district court did not err in

17   concluding that these terms have plain meanings that do not require additional construction.").

18   Rather, "[c]laim construction is a matter of resolution of disputed meanings and technical scope,

19   to clarify and when necessary to explain what the patentee covered by the claims, for use in the

20   determination of infringement." *Id.*

21          However, if the Court determines a construction is necessary since Specialized has put

22   the meaning of these terms in dispute, Icon's proposals add clarity to the meaning of "hinge" in

23   the context of the '180 patent.  Specifically, Icon proposes that "hinge" be construed as a

24

25   **PLAINTIFF ICON'S OPENING CLAIM CONSTRUCTION BRIEF**                                              8
     – CASE NO. 12-cv-03844

"flexible area separating each of the support portions from the nose to allow flexing [to occur] between each of the [first and second] support portions and the nose/front portion."

The specification supports a construction that clarifies that the "hinge" need not be "specific" nor "localized," as Specialized has proposed; rather, the specification contemplates embodiments where the hinge sections are "integral portions of the seat . . . defined by the transition areas" between the support sections and the front sections.  Ex. B, '180 patent, col. 17:20-23.  In fact, the preferred embodiment of the invention includes a shell entirely comprised of flexible material, wherein the hinge is integral with the remainder of the shell and "the transition from the nose portion 18 to the support portions 12 and 14 allows flexing movement of the support portions 12 and 14 about the hinges 20 and 22 relative to the front portion." *Id.* at col. 8:7-36.

The language of claim 14 that is not in dispute further describes a hinge, consistent with Icon's proposed construction, as being a flexible area that allows flexure:

> …each of the support portions being independently movable relative to the nose portion and each *other by flexure of the flexible material* from which the shell is formed so *that a transition between the two separate support portions and the nose portion forms a hinge* ….

*Id.* at claim 14 (emphasis added).  Specialized's proposed construction directly contravenes the claim language and written description by requiring the hinge to be a specific, localized flexing region.

As provided above, Specialized has also forced into dispute the meaning of the term "substantially independent[ly] [arcuate] movement," again adding limitations that are neither present in the claims nor supported in the intrinsic record.   Icon submits that this phrase needs no construction because the disputed terms are neither complicated nor used in any specialized manner for the jury to require clarification from the Court.  Further, the terms are unambiguous

when read in the context of the claims.  Federal Circuit precedent establishes that the context in which a term is used in the asserted claim is "highly instructive" to the claim construction process.  *Phillips*, 415 F.3d at 1314.  The asserted claims read as follows:

> …a hinge between the first and second support portions and the front portion for allowing each of the first and second support portions to undergo ***substantially independent arcuate movement having a component at least in a substantially vertical plane*** when the rider is seated on the support portions and performing a pedaling [sic] motion. ('180 Patent, claim 1).

> …a hinge for allowing each of the first and second support portions to undergo ***substantially independent movement arcuate relative to one another and the nose portion, the independent arcuate movement having a component at least in a substantially vertical plane*** when a rider is seated on the support portions and forming a pedalling [sic] motion… ('180 Patent, claim 12).

> …each of the support portions being independently movable relative to the nose portion and each other by flexure of the flexible material from which the shell is formed so that a transition between the two separate support portions and the nose portion forms a hinge allowing the two separate support portions to undergo ***substantially independently movement*** when a rider is seated on the bicycle seat and pedalling [sic] a bicycle.  ('180 Patent, claim 14).

No further description of the movement allowed by the hinges is necessary because the claims define the independent movement allowed by the hinges.  While all three claim terms require that the hinges allow each of the support portions to undergo substantially independent movement, claim 1 requires movement that is arcuate and has a component at least in a substantially vertical plane.  Claim 12 defines the movement of the support portions as arcuate relative to the other support portion and the nose portion and also as having a component in at least a substantially vertical plane.  These differences are meaningful, and Specialized's proposed construction renders these differences superfluous.  *See, e.g., Kara Tech. Inc*, 582 F.3d at 1348 ("The asserted claims, in contrast to other claims in these patents, do not contain [a specific limitation], and we decline to read such a limitation into them."); *Haemonetics Corp.*,

1   607 F.3d at 781 (holding that claims should be construed "with an eye toward giving effect to all

2   of their terms").

3          Specialized's litigation-motivated strategy is perhaps most glaring when Specialized's

4   proposed construction is applied to claim 14.  Claim 14 does not require that the support portions

5   undergo <u>arcuate</u> independent movement as do claims 1 and 12.  Instead, the movement of the

6   support portions is merely independent relative to the nose portion and the other support portion.

7   Yet, ignoring this difference, Specialized's blanket construction requires that the support

8   portions "independently rotate in an arc."

9          Specialized also seeks to rewrite the disputed terms to suit its litigation position by

10  adding limitations to the movement beyond what is recited in the claims.   There is no

11  requirement that the flexure allowed by the hinges be without "interference or significant

12  dampening."  It is further unclear what would constitute "interference or significant dampening"

13  under Specialized's proposed construction.  In fact, the written description describes a preferred

14  embodiment in a way that suggests that there could me some amount of interference and

15  dampening of the movement.  *See, e.g.,* Ex. B, '180 Patent, col. 13:45-57 (discussing stop

16  members to "limit the amount of flexing movement" of support portions); col. 14:6-11

17  (discussing the addition of ribs to "increase stiffness" and "decrease the amount flexing

18  movement"); col. 15:13-17 (describing the "dampening" effect of springs).  Likewise, the claims

19  do not require that "the nose/front portion is held substantially still."

20         As such, the Court must adopt a construction that is consistent with the plain language of

21  the claims and the specification and avoids improperly importing limitations. Therefore, the

22  Court should adopt Icon's proposed constructions for the "hinge" terms.

23

24

25  **PLAINTIFF ICON'S OPENING CLAIM CONSTRUCTION BRIEF**                                          11
    – Case No.  12-cv-03844

### 2.     "Stop Means" Terms

| Terms | Icon's Proposed Construction | Specialized Proposed Construction |
|---|---|---|
| "stop means for limiting the amount of movement of the first and second support portions" (Claim 12) | Icon contends that this term is governed by 35 U.S.C § 112(f).<br><br>Function:<br>Limiting the amount of movement of the first and second support portions<br><br>Corresponding Structure:<br>End portions of the mounting brackets and equivalents | Term Nos. 4 and 5 are governed by 35U.S.C. § 112, ¶ 6.<br><br>The functions are:<br>4. "limiting the amount of movement of the first and second support portions"<br>5. "limiting movement of the two support portions"<br><br>The corresponding structure for both terms is: the rearwardly extending free end sections 145 spaced from the lower surface of the shell 11 as shown and described in 3:47-50; 12:45-57; 13:42-65; 14:39-51 and Figs. 29, 32-36, and equivalents. |
| "stop means is provided for limiting movement of the two support portions" (Claim 22) | Icon contends that this term is governed by 35 U.S.C § 112(f).<br><br>Function:<br>Limiting the amount of movement of the two support portions<br><br>Corresponding Structure:<br>End portions of the mounting brackets and equivalents | |

The parties agree that the "stop means" terms are governed by 35 U.S.C. § 112(f)[2], commonly referred to as a "means-plus-function" limitation.   Therefore, the claim must be construed to cover the "structure, material, or acts described in the specification and equivalents thereof" that correspond to the claimed function.  35 U.S.C. § 112(f).

Construction of a means-plus-function limitation requires two steps.   "First, the court must identify the claimed function.   Second, the court must identify the corresponding structure in the specification that performs the recited function," including equivalents thereof.  *Chicago*

---

[2] 35 U.S.C. § 112 ¶6 was recently recodified as 35 U.S.C. § 112(f).  For ease of reference, Icon will refer to this statue as 35 U.S.C. 112(f) throughout this brief.

1   *Bd. Options v. Intern. Securities Exchange*, 677 F.3d 1361, 1367 (Fed. Cir. 2012) (citing *Applied*

2   *Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1332 (Fed. Cir. 2006)).

3          Here, the parties agree that the functions of the stop means terms in claims 12 and 22 are

4   (1) limiting the amount of movement of the first and second support portions and (2) limiting the

5   amount of movement of the two support portions, respectively.   These functions are consistent

6   with the language of the claims in which the terms appear.   The only remaining issue for the

7   Court to decide is which structures described in the specification correspond to the claimed

8   functions.

9          Regarding the structure, the parties are in agreement that the structure is comprised of the

10   end portions of the mounting brackets.   For example, Icon's proposed construction reads: "end

11   portions of the mounting brackets and equivalents," and Specialized's proposed construction

12   reads: "the rearwardly extending free end sections 145 spaced from the lower surface of the shell

13   11 . . . ."   The dispute, therefore, is whether the structure for the claimed "stop means" is limited

14   to end portions "spaced from the lower surface of the shell 11," as Specialize proposes.   The

15   specification and the claims evidence that the "stop means" should not be limited in this manner.

16          It is important to remember that, under the canons of claim construction, properly

17   identified structure is only that which is identified in the specification as being the structure

18   necessary to perform the recited function. "Under [35 U.S.C. § 112(f)], a court may not import

19   functional limitations that are not recited in the claim, or structural limitations from the written

20   description that are unnecessary to perform the claimed function." *Wenger Mfg., Inc. v. Coating*

21   *Machinery Sys., Inc.*, 239 F.3d 1225, 1233 (Fed. Cir. 2001).   "Structural features that do not

22   actually perform the recited function do not constitute corresponding structure and thus do not

23   serve as claim limitations." *Asyst Techs., Inc. v. Empak, Inc.*, 268 F.3d 1364, 1370-71 (Fed. Cir.

24   2001).   But, Specialized has asked this Court to improperly import a limitation for "stop means"

25   **PLAINTIFF ICON'S OPENING CLAIM CONSTRUCTION BRIEF**                                            13
      – CASE NO.  12-CV-03844

by requiring the end portions of the mounting bracket to be "spaced from the lower surface of the shell 11." While this relationship between the "stop means" and the lower surface of the bicycle saddle is disclosed as a preferred embodiment and is claimed by dependent claim 13, it cannot be properly considered part of the structure performing the function of limiting the amount of movement of the first and second support portions.

The parties agree that the function is "limiting the amount of movement of the [first and second support portions/two support portions]." As such, the question is what structure does the specification associate with performing that function. At several locations, the specification specifically identifies the downward movement of the first and second support portions as being limited by the end portions of the mounting brackets. For example, the specification describes "the rear portion 145 of the rails 40 which form the stop members . . .," (Ex. B, '180 Patent, col. 12:45-47), "[t]he rear portion 145 form the stop members which limit the amount of flexing movement of the portions 12 and 14 relative to one another and the nose 18 . . .," (*id.* at col. 13:45-48). Therefore, the specification clearly links the structure formed by the end portions of the mounting brackets to the recited function of limiting the amount of movement of the first and second support portions.

Similarly, dependent claim 13, which is a separate claim that further limits independent claim 12, provides strong evidence against the construction proposed by Specialized. "The presence of a dependent claim that adds a particular limitation raises a presumption that the limitation in question is not found in the independent claim." *Acumed C v. Stryker Corp.*, 483 F.3d 800, 806 (Fed. Cir. 2007). This rule is commonly referred to as the doctrine of claim differentiation, which is derived from the fact that each claim in a patent is presumptively different in scope. *Wenger Mfg.*, 239 F.3d at 1233. While this rule only creates a presumption, it is a presumption, in this case, that Specialized cannot overcome.

In this case, dependent claim 13 specifically adds the particular limitation that Specialized is trying to import into independent claim 12, which is presumptively improper. Specifically, claim 13 states: "[t]he bicycle seat of claim 12, wherein the bicycle seat includes a mounting rail for mounting the seat to a bicycle and the ***stop means comprises end portions of the mounting rail which are spaced from the first and second support portions and positioned below the first and second support portions***." Ex. B, '180 patent, col. 18:41-47 (emphasis added). Thus, because the "spaced from the lower surface of the shell 11" language Specialized attempts to import into the "stop means" structure of independent claim 12 is expressly recited in dependent claim 13 and because it is the only meaningful difference between independent claim 12 and dependent claim 13, there is a strong presumption against Specialized's proposed construction. Put another way, the fact that dependent claim 13 expressly adds this limitation to further limit claim 12 is strong evidence that the same limitation does not already exist in claim 12. Therefore, Specialized's attempt to import this limitation should be rejected.

**B.     '938 Patent**

**1.     "Permanently Transverse" Terms**

| Terms | Icon's Proposed Construction | Specialized Proposed Construction |
|---|---|---|
| "permanently transverse with respect to the longitudinal axis of the bicycle when the support means couples the seat to the bicycle so that without other supports, it is not possible to permanently sit on the [inclined surface/abutment | Icon contends that this claim term requires no construction. However, if the Court determines this claim requires construction, Icon contends the construction should be:<br><br>"permanently on an inclined axis that crosses the longitudinal axis of the bicycle when the support means couples the seat to the bicycle so that without other supports, it is not possible to permanently sit on the [inclined surface/abutment means] with the | "when the support means couples the seat to the bicycle, the abutment means is permanently inclined with respect to the horizontal as viewed from either side of the bicycle to such an extent that that it is not possible for a rider with the backbone arranged generally vertically to sit on the seat permanently without some other support because the rider will simply slip forward on the seat, and therefore the rider is placed in a generally standing position as opposed to a seated position" |

| means] with the backbone of the [rider/person] arranged generally vertically" (Claims 1, 5, 11, 12, 13, 14) | backbone of the [person/rider] arranged generally vertically while in a riding position" | |
|---|---|---|

At first glance, the parties' proposed constructions for this term do not appear significantly different. However, Specialized offers a construction that does little to clarify its meaning. Instead, Specialized rearranges the order of the phrases, adds limitations, and uses nearly unintelligible language.

Claim construction is not an opportunity for either party to rewrite the claims. *See, e.g.*, *Rembrandt Data Techs., LP v. AOL, LLC*, 641 F.3d 1331 (Fed. Cir. 2011). Rather, "[t]here is a heavy presumption that claim terms are to be given their ordinary and customary meaning." *Aventis Pharms. Inc. v. Amino Chems. Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013). The focus must begin and remain centered on the language of the claims since those words, selected by the inventor, define the scope of the claim. *Id.* Icon has offered a construction that is consistent with the plain meaning of the phrase and in accord with the intrinsic record. Specifically, Icon's proposal clarifies that the abutment means is "permanently on an inclined axis that crosses the longitudinal axis of the bicycle," and also to specify that the claim describes how a rider's muscles and tissues react with the abutment means/inclined surface "while in riding position."

The "permanently transverse" phrase was discussed extensively during the prosecution of the '938 patent. The prosecution history is helpful because it may inform "the meaning of the claim language by demonstrating how the inventor understood the invention." *Phillips*, 415 F.3d at 1317. Here, the patentee added "permanently" to distinguish his invention from prior art patent Barker. Ex. C, Jan. 31, 1997 Amendment at pp. 9-12. Barker discloses a seat with

support members that are allowed to "rock between a substantially horizontal position and an inclined position about the support member." Ex. D, Dec. 31, 1998, Appeal Brief at p. 12. The seat claimed in the '938 patent is distinguishable from Barker, the patentee explained, because it does not include a support means that <u>permanently</u> coupled the abutment means to the bicycle transverse with respect to the longitudinal axis. *Id.*; *see also* Ex. E, B.P.A.I. Decision of Aug. 31, 2001 at pp. 5-8. Icon's proposed construction is consistent with this meaning.

The patentee also amended "transverse with respect to the horizontal" to "transverse with respect to the longitudinal axis of the bicycle" to overcome the examiner's rejection of the claim under 35 U.S.C. § 112. Ex. F, Apr. 24, 1997 Office Action at p. 3; Ex. G, Jan. 8, 1998 Amendment at pp. 8-9. Explaining his amendment, the patentee provided that the longitudinal axis of the bicycle "provides a fixed reference with respect to the angle" at which the seat is oriented, particularly in situations in which the bicycle is reoriented, "such as by going up a steep hill." *Id.* Icon's proposed construction "permanently on an inclined axis that crosses the longitudinal axis of the bicycle when the support means couples the seat to the bicycle" is consistent with patentee's well-reasoned amendments and appropriately reflects his intended scope of the claims.

Apart from arbitrarily rearranging the order of the phrase, Specialized apparently agrees that the latter portion of the term, "so that without other supports, it is not possible to permanently sit on the [inclined surface/abutment means] with the backbone of the [rider/person] arranged generally vertically," needs no substantial clarification. However, Specialized proposes importing from the specification additional limitations that are described in reference to one embodiment. That is improper. *Gemstar-TV Guide Int'l, Inc. v. ITC*, 383 F.3d 1352,1366 (Fed. Cir. 2006). Specialized's added language, "because the rider will simply slip forward on the

seat and …is placed in a generally standing position as opposed to a seated position," unduly narrows the scope of the claim beyond what the inventor intended.

On the other hand, Icon offers a construction that stays true to the plain language of the claims and the specification.  When read in view of the specification, as they must, *Phillips*, 415 F.3d at 1315, the disputed claim terms describe the positioning of the seat in relation to the rider <u>while in riding position</u>.  As described in the specification, the seat provides an abutment for stabilizing the rider and positioning the rider in the standing position so maximum pedal power can be delivered.  Ex. A, '938 patent, col. 5:45-48.  As shown in Figure 5 of the '938 patent, <u>while in riding position</u>, a rider will not be able to sit on the inclined surface/abutment means with his backbone arranged in a vertical direction without other supports:



The specification further describes the positioning of the rider on the abutment means/inclined surface when the rider's feet are on the pedals and when the rider's hands are on the handlebars. *Id.* at col. 5:41-57 (describing rider where rider's feet are on the pedals and hands are in the handlebars); col. 4:20-30 (describing reaction surface for rider's ischial bones in reaction to pedaling pressure).   From the context of the claims and the intrinsic record, it is clear that the

phrase "so that without other supports, it is not possible to permanently sit on the [inclined surface/abutment means] with the backbone of the [rider/person] arranged generally vertically" relates to riding position.

### 2.   "Abutment Means" Terms

| Terms | Icon's Proposed Construction | Specialized Proposed Construction |
|---|---|---|
| "an inclined surface forming abutment means for receiving a portion of a rider's anatomy which is adjacent to at least one of the rider's ischial bones" (Claim 1) | Icon contends that this claim term requires no construction. However, if the Court determines this claim requires construction, Icon contends the construction should be:<br><br>"an inclined surface forming an abutment for receiving a portion of a rider's anatomy which is directly next to at least one of the rider's ischial bones while in a riding position" | The phrase "an inclined surface forming" in these terms needs no construction. The remainder of the claim language in Term Nos. 7-10 is governed by 35 U.S.C. § 112, ¶ 6.<br><br>The functions are:<br><br>7. "receiving a portion of a rider's anatomy which is adjacent to at least one of the rider's ischial bones"<br>8. "abutting a rider's tissue"<br>9. "receiving substantially only that portion of a person's seating anatomy which covers at least a part of one of the person's ischial bones thereof" |
| "an inclined surface forming abutment means against which a rider's tissue can abut" (Claims 5, 11) | Icon contends that this claim term requires no construction. However, if the Court determines this claim requires construction, Icon contends the construction should be:<br><br>"an inclined surface forming an abutment against which a rider's tissue can abut while in a riding position" | 10. "receiving a portion of a person's seating anatomy which covers at least a part of one of the person's ischial bones thereof"<br><br>The corresponding structure is: the abutment segments 14 as shown in Figs. 1-5 and described at 4:5-12, 4:20-47, and 4:52-63, and equivalents. |
| "an inclined surface forming abutment means for receiving substantially only that portion of a person's | Icon contends that this claim term requires no construction. However, if the Court determines this claim requires construction, Icon contends the construction should be:<br><br>"an inclined surface forming an abutment for receiving substantially only that portion of a | |

| | | |
|---|---|---|
| seating anatomy which covers at least a part of one of the person's ischial bones thereof" (Claim 12) | person's seating anatomy which covers at least a part of one of the person's ischial bones thereof while in a riding position" | |
| "an inclined surface [portion] forming abutment means intended for receiving a portion of a person's seating anatomy which covers at least a part of one of the person's ischial bones thereof" (Claims 13, 14) | Icon contends that this claim term requires no construction. However, if the Court determines this claim requires construction, Icon contends the construction should be:<br><br>"an inclined surface forming an abutment for receiving a portion of a person's seating anatomy which covers at least one of the person's ischial bones thereof while in a riding position" | |

The parties disagree as to whether these terms are governed by 35 U.S.C. § 112(f). In an effort to erroneously limit the abutment means terms to the structure shown in Figures 1-5 of the '938 patent specification, Specialized proposes that these terms are governed by § 112(f). Icon submits that these terms are not governed by 35 U.S.C. 112(f) because they expressly recite the structure necessary to perform the recited function, and "[m]eans-plus function claiming applies only to purely functional limitations that ***do not*** provide the structure that performs the recited function." *Phillips*, 415 F.3d at 1311 (emphasis added). The "[u]se of the word 'means' . . . creates a presumption that §112 P 6 applies." *TriMed, Inc. v. Stryker Corp.*, 514 F.3d 1256, 1259 (Fed. Cir. 2008), *rev'd on other ground*, 608 F.3d 1333 (Fed. Cir. 2010). However, "[i]f, in

1    addition to the word 'means' and the functional language, the claim recites sufficient structure

2    for performing the described functions in their entirety," the presumption is overcome and the

3    limitation is not a means-plus-function limitation.  *Id.*  This is true even if the patentee amended

4    the term to be expressed in a means-plus-function format during prosecution.  *Id.* at 1261.

5           Here, the presumption that the limitation is a means-plus-function limitation is overcome

6    because the claims clearly articulate the structure for performing the functions recited in the

7    disputed claims, i.e., receiving a portion of a rider's anatomy which is adjacent to at least one of

8    the rider's ischial bones (claim 1); abutting a rider's tissue and providing a reaction surface for

9    rider's ischial bones when the rider is pedaling (claims 5, 11); receiving substantially only that

10   portion of a person's seating anatomy which covers at least a part of one of the person's ischial

11   bones thereof (claim 12); and receiving a portion of a person's seating anatomy which covers at

12   least a part of one of the person's ischial bones thereof (claims 13, 14).

13          Each of the disputed claims specifically recites the structure that performs the identified

14   functions – an inclined surface.  Further, the claims define the size, shape, and orientation of the

15   surface.   The abutment means of claims 1 and 11 must be  "dimensioned to receive only the

16   portion of the rider's anatomy adjacent to the ischial bones so that the rider's soft tissue

17   substantially outside the ischial bone(s) is not compressed by the seat when the rider is on the

18   seat."   Ex. A, '938 patent, col. 6:46-50; col. 7:51-55. Claim 5 similarly provides that the

19   abutment means is "dimensioned to support the tissue only adjacent the ischial bones such that

20   the majority of the tissue is not in engagement with the abutment means."  *Id.* at col. 7:12-15.

21   Claims 12 and 14 provide that the abutment means must be "dimensioned so that the majority of

22   the person's seating anatomy is off said abutment means [and] so that substantially all the soft

23   tissue surrounding said portion of the person's seating anatomy is not compressed by the seat

24   when the person is on the seat."  *Id.* at col. 7:64-8:2; col. 7:39-44. Finally, claim 13 recites that

25

the abutment means is "dimensioned so that the majority of the seating compression to the seating anatomy occurs between the ischial bones and said abutment means and so that substantially all the soft tissue surrounding said portion of the person's seating anatomy is not compressed or squeezed by the seat when the person is on the seat." *Id.* at col. 8:17-24.

Not only do the claims describe the structure with specificity, the claims also recite how the structure is oriented, namely, "permanently transverse with respect to the longitudinal axis of the bicycle…."  *See Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 531 (Fed. Cir. 1996) ("An element with such a detailed recitation of this structure, as opposed to its function, cannot meet the requirements of [35 U.S.C. § 112(f)].").  Here, because the claims specify the structure, the dimensions, and orientation of the abutment means that performs the functions recited in the claims, 35 U.S.C. §112(f) does not apply.  *See TI Grp. Auto. Sys. v. VDO N. Am.*, 375 F.3d 1126, 1135 (Fed. Cir. 2004) (holding that "pumping means" was not governed by § 112(f) because the claim recited the structure, location and operation).

Although it is unnecessary to look outside the disputed claims, that the inclined surface with the dimensions described above is the recited structure for performing the claimed functions is further supported by the specification and prosecution history of the '938 patent.   For example, in the applicant's remarks to the examiner, the patentee consistently uses inclined surface and abutment means interchangeably:

> Applicant has also amended all the independent claims so that they now define that the support means further includes structure for coupling the abutment means (or inclined surface) to the bicycle so that the abutment means (inclined surface) is permanently transverse with respect to the longitudinal axis …

Ex. G, Jan. 8, 1998 Amendment at p. 8; *see also id.* at p. 11 (distinguishing Barker).  The claims themselves offer further support that the inclined surface constitutes the structure of the abutment means.  *Compare* Ex. A, '180 patent at claims 1 and 16 ("it is not possible to permanently sit on

the inclined surface . . .") *with* '180 patent at claims 5, 11-14 ("it is not possible to permanently sit on the abutment means . . .") (utilizing inclined surface and abutment means in the same context).

Because the "abutment means" terms are not governed by 112(f), the plain meaning of this term speaks for itself.  If the Court is inclined to construe these claim limitations, Icon submits alternative proposed constructions in an effort to clarify that the patentee intended the disputed claim terms to describe the abutment means and the anatomy received thereby <u>when the rider is in a riding position</u>.   These constructions are supported throughout the specification. *See, e.g,* Ex. A, '180 patent, Figure 5 (showing rider in riding position); col. 4:24-30 (discussing reaction of rider's anatomy with seat while in a riding position); col. 4:52-63 (same); col 5:48-57 (same); *supra*, pp. 18-19 (discussion of "while in riding position").

If, on the other hand, the Court were to construe these terms as means-plus-function limitations, the structure disclosed in the specification is still consistent with the structure described above.  Therefore, if the Court determines the disputed claims are governed by section 112(f), Icon submits that the corresponding structure for performing the above-identified functions is an "inclined surface dimensioned only to accommodate the muscle or tissue adjacent to the ischial bones so that the majority of the muscle or tissue outside the ischial bones is not squeezed or compressed."  *See, e.g.,* Ex. A, '180 patent, col. 4:19-29, col. 4:57-60; col. 5:41-57; col. 6:19-27.

## IV.   CONCLUSION

For the foregoing reasons, Icon's proposed constructions are correct, and Icon respectfully requests that the Court adopt them in their entirety.

Respectfully submitted,

 /s/ Ashley E. LaValley
MARTIN L. FINEMAN, CA State Bar No. 10441
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street
San Francisco, California 94111-6533
Telephone: (415) 276-6500
Facsimile: (415) 276-6599
Email: martinfineman@dwt.com

RAYMOND P. NIRO
FREDERICK C. LANEY (*admitted pro hac vice*)
ASHLEY E. LaVALLEY (*admitted pro hac vice*)
NIRO, HALLER & NIRO
181 W. Madison, Suite 4600
Chicago, Illinois  60602
Phone: (312) 236-0733
Fax: (312) 236-3137
E-mail: rniro@nshn.com
E-mail: laney@nshn.com
E-mail: alavalley@nshn.com
**Attorneys for Plaintiff ICON-IP PTY LTD.**

1

### CERTIFICATE OF SERVICE

2

The undersigned hereby certifies that on July 19, 2013 the foregoing

3

### PLAINTIFF ICON'S OPENING CLAIM CONSTRUCTION BRIEF

4

was filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following counsel of record.

5

6

7

8

Darrell L. Olson (Bar No. 77633)
darrell.olson@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Suite 1400
Irvine, CA 92614
Telephone: 949-760-0404
Facsimile: 949-760-9502

9

10

11

12

Timothy J. Goodson (Bar No. 244649)
timothy.goodson@kmob.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
333 Bush Street, 21st Floor
San Francisco, CA 94104
Telephone: 415-954-4114
Facsimile: 415-954-4111

13

14

Attorneys for Defendant/Counterclaimant
SPECIALIZED BICYCLE COMPONENTS, INC.

15

16

17

*/s/ Ashley E. LaValley*
Attorneys for Icon IP-Pty. Ltd.

18

19

20

21

22

23

24

25

**PLAINTIFF ICON'S OPENING CLAIM CONSTRUCTION BRIEF**
– CASE NO. 12-cv-03844