United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ICON-IP PTY LTD.,

            Plaintiff,

    v.

SPECIALIZED BICYCLE COMPONENTS, INC.,

            Defendant.

Case No.  12-cv-03844-JST   (MEJ)

**DISCOVERY ORDER**

Re: Dkt. Nos. 91, 92

### INTRODUCTION

Pending before the Court are two Joint Discovery Dispute Letters, filed August 8, 2014. Dkt. Nos. 91 ("Infr. Ltr.") and 92 ("Red. Ltr."). In the first Joint Letter, Plaintiff Icon-IP Pty Ltd. seeks to compel Defendant Specialized Bicycle Components, Inc. to produce discovery pertaining to Body Geometry saddles not accused in this action. Infr. Ltr. at 1. In the second Joint Letter, Icon seeks to compel Specialized to produce unredacted versions of documents pertaining to Body Geometry sales figures Specialized redacted on the basis of relevance. Red. Ltr. at 1.

### BACKGROUND

On July 23, 2012, Icon filed a Complaint against Specialized in which it accused 33 bicycle saddles of infringing U.S. Patent No. 6,378,938 and/or U.S. Patent No. 6,254,180. Dkt. No. 1. On November 28, 2012, Icon served its infringement contentions, and subsequently amended them on December 31, 2012. Infr. Ltr. at 3. On March 28, 2013, Icon moved for leave to amend its infringement  contentions to add 53 models to the 33 models it originally accused of infringing. Mot. for Leave to Amend, Dkt. No. 34.

On April 29, 2013, the Court granted Icon's motion as to four of the models because Specialized did not oppose the addition of these saddles in order to narrow the issues. Order re:

Mot. to Amend at 3, Dkt. No. 44.  The Court denied Icon's motion as to the remaining 49 models for lack of diligence, in part because Icon could have long ago discovered from Specialized's website the information it needed for an infringement analysis.[1]  *Id.*  On June 16, 2014, Icon filed a second motion to amend its contentions seeking to add twelve additional models to the case.  Dkt. No. 79.  Specialized opposed the motion because nearly half of these additional models were introduced and publicly available on Specialized's website before Icon filed its original contentions.  Infr. Ltr. at 3.  The others were publically available on the website nearly a year ago and only a few months after the Court's decision on the first motion to amend.  *Id.*  Icon's latest motion to amend is pending.  *Id.*

On June 12, 2013, Icon requested discovery relating to all Specialized "Body Geometry" saddles.  Infr. Ltr., Ex. A, Icon's First Set of Document Requests ("RFP") Nos. 2, 7, 8, 54, 61, and 62; and Ex. B, Icon's  First Set of interrogatories Nos. 1-4, 6-10.  Icon maintains that that discovery regarding the unaccused saddles is relevant because elements of Body Geometry technology are teachings of the patents-in-suit, and thus Body Geometry technology is central to Icon's infringement claim.  Infr Ltr. at 2.  The discovery is also relevant to Icon's reasonable royalty calculations.  *Id.*

Specialized objects to the discovery requests as seeking irrelevant information, and maintains that they are "overbroad and unduly burdensome in seeking saddles beyond those that are accused of infringing."  Infr. Ltr., Ex. C, Specialized's Objections to Icon's First Set of Document Requests ("Obj. to RFP"), and Ex. D Non-Confidential Excerpts from Specialized's Objections to Icon's First Set of Interrogatories.  It is Specialized's position that Icon cannot bring Specialized's Body Geometry product line into the case based upon its belief that unaccused saddles infringe, when such saddles are not part of their infringement contentions.  Infr. Ltr.  at 4.  Thus, until Icon adds the saddles to their infringement contentions, they are not relevant to the current infringement claim.  *Id.*

---

[1] Icon also attempted to file a second infringement complaint accusing the additional seat models.  *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, Case No. 13-cv-3677, Dkt. No. 1.  The Court dismissed this suit on October 22, 2103.  *Id.,* Dkt. No. 24.

United States District Court
Northern District of California

**DISCUSSION**

**A.      Docket No. 91**

      1.      <u>Whether Icon Is Entitled to Discovery of Unaccused Saddles</u>

Icon argues that discovery relating to the Body Geometry saddles not accused of infringement is relevant to Icon's case, including those saddles the Court previously excluded from this action. *Id.* at 2. Icon's position is that Specialized defines Body Geometry as using "customized shapes, cut-aways and multi-density padding to reduce pressure on arteries and soft tissue for improved blood flow and comfort," and that these considerations are teachings of the patents-in-suit. *Id.* Thus, Body Geometry technology is central to Icon's infringement claims. *Id.* Icon further argues that because the Court has previously held that the excluded seats were "essentially the same" as the accused seats for infringement purposes, documents relating to testing, conception, design, or marketing of any Body Geometry saddle, including the very first Body Geometry saddle offered by Specialized, could potentially lead to the discovery of admissible evidence regarding the Body Geometry technology implemented in the accused saddles. *Id.* at 2 (citing Order Granting Mot. to Dismiss ("*Icon II* Order"), *Icon v. Specialized*, Case No. 13-cv-3677, Dkt. No. 24, at  6). Icon contends this is particularly true with respect to documents relating to unaccused saddles in the same product families as the accused saddles or Specialized's initial Body Geometry saddles, which likely contain information regarding Specialized's conception of and decision to implement infringing technology in its saddles. *Id.* Icon believes this information is responsive to RFP Nos. 7 and 8. Last, Icon argues that information relating to Body Geometry saddles is relevant to its reasonable royalty calculations. *Id.*

In response, Specialized argues that Icon is not entitled to discovery regarding its line of saddles that are not accused of infringement, including saddles "previously excluded from this action." Infr. Ltr. at 3. Specialized contends that Icon should not be able to use discovery as a back door to add additional Body Geometry saddles as accused products after failing to add them to the infringement contentions. *Id.* In addition, Specialized contends that substantially all of its saddles include Body Geometry features with the exception of a small number of saddles sold on

1    certain Specialized bikes.  *Id*. at 4.  Specialized further asserts that Icon has not carried its burden

2    of showing how the testing conception design and marketing of saddles different from the accused

3    saddles is relevant to showing infringement by the accused saddles.  *Id*.  As a result, Icon's

4    discovery requests would force Specialized to guess which Body Geometry saddles Icon believes

5    allegedly use the "infringing technology" and which do not.  *Id*.  Specialized also rejects Icon's

6    royalty argument as it relates to unaccused products.  *Id*.

7        "The overriding principle of the Patent Local Rules is that they are designed [to] make the

8    parties more efficient, to streamline the litigation process, and to articulate with specificity the

9    claims and theory of a plaintiff's infringement claims."  *Mediatek Inc. v. Freescale Semiconductor*,

10   2013 WL 588760, at * 1 (N.D. Cal. Feb. (quoting *Bender v. Maxim Integrated Prods., Inc*., 2010

11   WL 1135762, at *2 (N.D. Cal. Mar. 22, 2010) (alteration in original) (internal citation omitted)).

12   These rules streamline discovery by "replac[ing] the series of interrogatories that accused

13   infringers would likely have propounded in [their] absence."  *Solannex, Inc. v. MiaSolé, Inc*., 2013

14   WL 1701062, *2 (N.D. Cal. Apr. 18, 2013).  Patent local rules are "designed specifically to

15   require parties to crystallize their theories of the case early in the litigation so as to prevent the

16   shifting sands approach to claim construction."  *O2 Micro Int'l, Ltd. v. Monolithic Power Sys*., 467

17   F.3d 1355, 1364 (Fed. Cir. 2006) (internal quotations and citation omitted).

18       Specialized cites *Kelora Systems, LLC v. Target Corp*., 2011 WL 5444419 (N.D. Cal. Nov.

19   9, 2011) and *Mediatek*, 2013 WL 588760, two recent patent cases which it argues are on point.  In

20   *Kelora*, the court denied a patentee's motion to compel an accused infringer to produce discovery

21   on websites not identified in the infringement contentions as support for its arguments.  2011 WL

22   5444419, at *2.  The court required Kelora to first seek leave to amend its infringement

23   contentions before pursuing discovery on unaccused websites because, "[the discovery] is

24   effectively asking Defendants to guess at which other websites are encompassed by the term

25   'guided parametric search,'" which "defeats a central purpose of LPR 3-1, which is to 'make

26   discovery manageable.'"  *Id*. at *3 (citing *Bender v. Freescale*, 2010 WL 1689465, at *3 (N.D.

27   Cal. Apr. 26, 2010)).

28       In *Mediatek*, the court held that the patentee was not entitled to discovery on additional

United States District Court
Northern District of California

4

1   unaccused products, "unless such discovery is somehow related to the claims involving the

2   accused products."  2013 WL 588760, at *2.  As in *Kelora*, the court held that "[i]f a party

3   identifies additional infringing products after service of the [preliminary infringement

4   contentions], then it must move to amend [the infringement contentions] to include the additional

5   accused products before seeking discovery on them."  *Id*. at *4.  It may not transfer the burden of

6   identifying accused products to the defendant.  *Id.*  The court declined to require the defendant "to

7   produce voluminous discovery related to every product which Freescale determines contains any

8   particular feature" because that would "eviscerate[] the goal of the Patent Local Rules to

9   streamline discovery by requiring the party claiming infringement to identify with particularity

10  how each accused product infringes the patents-in-suit."  *Id.* at *2.

11       Specialized argues that *Kelora* and *Mediatek* are on point here because Icon has already

12  attempted to amend its infringement contentions to add the Body Geometry products, but that

13  request was denied.  Infr. Ltr. at 4.  Specialized disputes that discovery regarding testing,

14  conception, design and marketing of unaccused Body Geometry saddles is relevant to Icon's

15  infringement contentions regarding accused saddles simply because Icon asserts that those saddles

16  "include the infringing technology."  *Id.*

17       Icon counters that these cases are inapposite because neither case dealt with a situation

18  where the patentee argued that the requested discovery was relevant to its infringement claims

19  against the accused products, as Icon does here.  *Id*. at 3.  The Court agrees with Specialized.

20       Icon has requested discovery relating to *all* Body Geometry saddles.  Taking Specialized at

21  its word, this category includes almost the entire line of Specialized's saddles.  Thus, as in *Kelora*,

22  Icon's discovery "is effectively asking [Specialized] to guess at which other [saddles] are

23  encompassed by the term ["Body Geometry"].  *Kelora*, 2011 WL 5444419, at *3.  Further, it is

24  unclear how the testing, conception, design and marketing of saddles different  from the accused

25  saddles is relevant to showing infringement by the accused saddles.  Icon's argument

26  impermissibly leaves it to Specialized to decide which Body Geometry saddles Icon has in mind

27  that allegedly use the "infringing technology" and which do not.  *Kelora*, 2011 WL 5444419, at

28  *3.  Specialized has sold over a hundred different models of bicycle saddles since model year

United States District Court
Northern District of California

United States District Court
Northern District of California

1  2007 under the Body Geometry name.  Specialized should not have to conduct a review of its

2  products going back several years and attempt to guess which of its products are similar enough

3  that Icon intended to name them as well.  Icon's arguments are also unpersuasive because it has

4  already had an opportunity to investigate and accuse the models at issue, but neglected to do so in

5  a timely manner.  As Judge Tigar stated in dismissing Icon's claim pertaining to these saddles in

6  *Icon II*, "Permitting Icon to get a second bite at the apple … would undermine the spirit and

7  purpose of the Patent Local Rules."  *Icon II* Order at 6.  Accordingly, if Icon seeks discovery as to

8  the unaccused saddles, it must first amend its infringement contentions to include such models

9  before it is entitled to discovery on them.

10        2.     Whether Discovery of Unaccused Saddles is Relevant to Damages

11        Icon next argues that information relating to Body Geometry saddles is further relevant to

12  its reasonable royalty calculation under *Georgia Pacific Corp. v. U.S. Plywood Corp.*, 318 F.

13  Supp. 1116, 1120 (S.D.N.Y. 1970).  The *Georgia Pacific* factors are widely accepted to calculate a

14  reasonable royalty rate in patent cases.  Factor 8 considers "[t]he established profitability of the

15  product made under the patent; its commercial success; and its current popularity."  *Id.*  Factor 11

16  is "[t]he extent to which the infringer has made use of the invention; and any evidence probative

17  of the value of that use."  *Id.*

18        Icon first argues that sales and revenue attributed to the Body Geometry seats is probative

19  of the commercial success and value of the patented technology under *Georgia Pacific* factors 8

20  and 11.  Infr. Ltr. at 3.  Second, Icon contends that sales information relating to the unaccused

21  Body Geometry saddles "may help to establish commercial success relevant to Icon's  non-

22  obviousness defense."  *Id.* (citing *Procter & Gamble Co. v. Teva Pharms. USA, Inc.*, 566 F.3d

23  989, 998 (Fed. Cir. 2009) ("Secondary considerations of non-obviousness include the commercial

24  success of the invention at issue ...").  Last, Icon argues that discovery relating to the unaccused

25  Body Geometry seats may also show the absence of acceptable non-infringing alternatives, which

26  can also be considered in the reasonably royalty analysis.  *Id.* (citing *Mars, Inc. v. Coin Acceptors,*

27  *Inc.*, 527 F.3d 1359, 1372-73 (Fed. Cir. 2008)).

28        Specialized maintains that Icon has not met its burden to establish that it is entitled to

1    discovery of sales information pertaining to the unaccused products.  *Id*. at 4 (citing *Kelora*, 2011

2    WL 5444419, at *2-3 and *Mediatek*, 2013 WL 588760, at * 2-4).  Specialized contends that

3    *Georgia Pacific* factors 8 and 11 do not relate to unaccused products.  *Id*.  Specialized also asserts

4    that Icon cannot obtain discovery of unaccused products to prove the absence of acceptable non-

5    infringing alternatives or the commercial success of the invention make information.  *Id*.  The

6    Court agrees with Specialized.

7            Icon cites to *Positive Techs., Inc. v. Sony Electronics, Inc*., 2013 WL 707914, at* 2 (N.D.

8    Cal. Feb. 26, 2013) as support for its argument that it is entitled to discovery of sales and revenue

9    figures for unaccused Specialized saddles that may be relevant to *Georgia Pacific* factors 8 and

10    11.  In *Positive Techs.*, the patentee claimed that certain Nook and Amazon E-Readers infringed

11    on three of its patents by use of a controller drive scheme which the defendants used as a

12    component in their E-Readers.  *Id*. at *1.  In an attempt to calculate a reasonable royalty rate,

13    Positive sought discovery of sales and revenue information regarding the relationship between the

14    accused E-Readers, and the sale of unaccused content and accessories on the theory that sales of

15    these items might have influenced hypothetical royalty negotiations.  *Id*.  The defendants argued

16    that discovery was unwarranted because Positive failed to establish that sales of the E-Readers

17    drove sales of the related unaccused content and accessories.  *Id*.  The court rejected defendants'

18    arguments and ordered defendants to produce the requested information as part of the relevant

19    royalty rate under *Georgia Pacific* factors 6, 8, and 11.  *Id*. at *4.  The court found that "the money

20    that Defendants [made] on both content and accessories sold with their E-Readers [was] probative

21    of the value of Defendant's use of the display controller scheme, as well as the commercial

22    success and popularity of the E-Readers."  *Id*. at 4.  Sales of these unaccused products were highly

23    relevant, as Positive argued that the defendants made the bulk of their revenue from sales of

24    content, which they induced customers to purchase by keeping the price of the E-Readers low.  *Id*.

25            By contrast, Icon has not articulated a damages theory that would entitle it to broad

26    discovery of sales and revenue data as to unaccused Specialized saddles.  Although Icon argues

27    that sales and revenue attributed to the Body Geometry seats is "probative of the commercial

28    success and value of the patented technology,"  Icon has not accused any other saddles of

United States District Court
Northern District of California

7

infringing, and thus has not made a connection between the accused and unaccused products.  Infr Ltr. at 3.  Nor does Icon explain how sales information relating to the unaccused Body Geometry saddles may be used to establish commercial success relevant to Icon's non-obviousness defense or show the absence of acceptable non-infringing alternatives.  *Id.*

**B.      Docket No. 92**

In the second letter, Icon seeks to compel Specialized to produce versions of documents Specialized redacted on the basis of relevance in response to Icon's First Set of RFP.  Red. Ltr. at 1.  The documents at issue are two spreadsheets providing financial data for Specialized's saddle line.  *Id.* at 2.  These spreadsheets list the saddles by name and provide the corresponding data for each saddle.  *Id.*  In addition to the accused saddles, the list includes the saddles not accused of infringing the patents-in-suit.  *Id.*  Specialized asserts that it has provided data for every accused saddle on the list and has removed the information for every saddle that is not accused in Icon's infringement contentions.  *Id.*

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter ... if [it] appears reasonably calculated to lead to the discovery of admissible evidence."  A "mere blanket averment" by counsel that unidentified documents may contain irrelevant material is not sufficient to permit redaction.  *Medtronic Sofamor Danek, Inc. v. Michelson*, 2002 WL 33003691, at *4 (W.D. Tenn. Jan. 30, 2002) (citing *United States v. Davis*, 1988 WL 96843, at *3 (S.D.N.Y. Sep. 13, 1988)).

Icon contends that Specialized redacted spreadsheets showing sales and revenue information as well as saddle specifications, and that the redactions are improper under Rule 34, which requires all documents be produced "as they are kept in the usual course of business."  Red. Ltr. at 1 (citing Fed. R. Civ. P. 34(b)(2)(E)(i)).  Icon maintains that the Federal Rules sanction only very limited unilateral redaction.  *Id.* (citing *Evon v. Law Offices of Sidney Mickell*, 2010 WL 455476, at *2 n. 1 (E.D. Cal. Feb. 3, 2010)).  Icon also asserts that generally, redactions of documents based on relevance or confidentiality concerns are disfavored.  *Id.* (citing *Live Nation Merchandise v. Miller*, 2014 WL 1877912, at * 3 (N.D. Cal. May 9, 2014)).

In response, Specialized maintains that it properly redacted data for the unaccused

products.  Red. Ltr. at 2-3 (citing *Kelora*, 2011 WL 5444419, at *2; *Mediatek*, 2013 WL 588760, at *4).  Specialized also avers that as to one of the more recent accused models, the Toupe Pro, there were no Toupe Pro sales before February 2013, but that it will provide updated financial information through model year 2014 in the near future.  *Id.* at 4.

As discussed above, the Court concludes that Icon is not entitled to discovery regarding the accused saddles.  *See Kelora*, 2011 WL 5444419, at *2 (plaintiff intending to pursue discovery on unaccused products should first seek to amend its infringement contentions); *Mediatek*, 2013 WL 588760, at * 4 (same).  Accordingly, Specialized properly redacted this data from the spreadsheets.  Icon is, however, entitled to discovery regarding the sales and specifications of the saddles accused in the patent-in-suit.  As to this data, Icon should provide Specialized with a list of the accused saddles it contends have been redacted from the spreadsheet.  If the parties cannot agree on production of this data, the parties shall meet and confer and, if unable to resolve their dispute, file a letter brief in accordance with the undersigned's Discovery Standing Order.

## CONCLUSION

For the foregoing reasons, Icon's motion to compel further responses to Icon's First Set of RFP Nos. 2, 7, 8, 54, 61, and 62; and Icon's  First Set of interrogatories Nos. 1-4, 6-10 is DENIED.  Icon's motion to compel Specialized to produce unredacted versions of documents showing sales data for unaccused saddles in response to Icon's First Set of RFP is DENIED; however, Specialized must produce unredacted data for all saddles accused in Icon's infringement contentions consistent with this Order.

**IT IS SO ORDERED.**

Dated: September 15, 2014

_____

MARIA-ELENA JAMES
United States Magistrate Judge

United States District Court
Northern District of California