UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ICON-IP PTY LTD.,

                 Plaintiff,

     v.

SPECIALIZED BICYCLE COMPONENTS, INC.,

                 Defendant.

Case No.  12-cv-03844-JST

**ORDER RE: MOTIONS TO EXCLUDE AND MOTIONS FOR SUMMARY JUDGMENT**

Re: ECF Nos. 152, 153, 167, 168, 169, 170, 171, 173, 175

United States District Court
Northern District of California

Before the Court are the following motions filed by Plaintiff Icon-IP Pty Ltd. ("Icon") and Defendant Specialized Bicycle Components, Inc. ("Specialized"): (1) Defendant's Motion Pursuant to F.R.E. 702/Daubert to Exclude the Opinions of Dr. Timothy Harrigan, ECF No. 152; (2) Defendant's Motion for Summary Judgment, ECF No. 153; (3) Plaintiff's Motion to Exclude Stephen M. Werner, Ph.D., P.E., ECF No. 168; (4) Plaintiff's Motion to Exclude James McIlvain and Paragraphs 90, 104, 106, 127, 159, 163, 194 and 203 of the Expert Rebuttal Report of Jeffrey Kinrich, ECF No. 169; (5) Plaintiff's Motion to Exclude the Testimony of Stephen G. Kunin and Bar Testimony Attacking the Competency of the Patent Office about Patent Law or Practice, ECF No. 170; (6) Defendant's Motion Pursuant to F.R.E. 702/Daubert to Exclude the Expert Testimony of Frank Bernatowicz, ECF No. 171; (7) Plaintiff's Motion to Exclude Roger Minkow, M.D., ECF No. 173; and (8) Icon's Motion for Summary Judgment, ECF No. 175.  The Court strikes the Motion to Exclude the Testimony of Stephen G. Kunin and Bar Testimony Attacking the Competency of the Patent Office about Patent Law or Practice filed at ECF No. 167 as duplicative of the motion filed at ECF No. 170.

For the reasons set forth below, the Court will: (1) deny Specialized's motion to exclude Harrigan; (2) grant in part and deny in part Icon's motion to exclude Werner; (3) deny Icon's

motion to exclude McIlvain and certain paragraphs of Kinrich's expert rebuttal report; (4) grant in part and deny in part Icon's motion to exclude Kunin; (5) grant in part and deny in part Specialized's motion to exclude Bernatowicz; (6) deny Icon's motion to exclude Minkow; (7) grant in part and deny in part Specialized's motion for summary judgment; and (8) grant in part and deny in part Icon's motion for summary judgment.

## I.    BACKGROUND

In this patent infringement action involving bicycle seats, Icon alleges that bicycle seats manufactured, sold, and/or offered for sale by Specialized infringe two of its patents, U.S. Patent No. 6,254,180 (the "'180 patent") and U.S. Patent No. 6,378,938 (the "'938 patent").  ECF No. 1.  Specifically, Icon asserts that the accused saddles infringe Claims 1, 3-6, 12, 14, 15, 17, 21, and 22 of the '180 patent and Claims 1-3, 5, and 11-14 of the '938 patent.

The '180 patent, entitled "Bicycle Seat," claims a support system that includes two buttock support portions.  The support portions are coupled to a front portion and can be separated by a longitudinal slot.  A hinge between each of the support portions and the front portion allows each support portion to undergo substantially independent arcuate movement having a component at least in a substantially vertical plane when the rider is sitting on the support portions and pedaling. The seat may be formed as a unitary shell, which may be covered by upholstery.  Also, the seat may include stop means to limit the amount of movement of the support portions.  A mounting rail may be coupled to the lower surface of the shell, and the front portion of the seat may have an undercut to secure this mounting rail.

The '938 patent, entitled "Cycle Seat," claims a bicycle seat comprising (1) an inclined abutment means dimensioned to receive only the portion of the rider's anatomy adjacent to the ischial bones, so that soft tissue substantially outside the ischial bones is not compressed by the seat; and (2) support means that couple the seat to the bicycle so that the abutment means is permanently transverse with respect to the longitudinal axis of the bicycle.  This arrangement means that, without other supports, it is not possible for a rider in a generally vertical position to permanently sit on the seat.  The seat may consist of metal and plastic and may be padded for comfort.

United States District Court
Northern District of California

The parties have each filed motions for summary judgment, and have collectively filed six motions to exclude expert testimony.  The Court will first consider the motions to exclude, and then turn to the summary judgment motions.

## II.     JURISDICTION

The Court has jurisdiction over this action for patent infringement pursuant to 28 U.S.C. § 1338.

## III.    MOTIONS TO EXCLUDE TESTIMONY

### A.     Legal Standard

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The law of the regional circuit governs a district court's evaluation of expert testimony in patent cases.  See Micro Chem., Inc. v. Lextron, Inc., 317 F.3d 1387, 1390-91 (Fed. Cir. 2003) (whether to admit expert testimony is a procedural question that is not unique to patent law and is governed by the law of the regional circuit).  In the Ninth Circuit, Rule 702 "contemplates a *broad conception* of expert qualifications."  Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1015 (9th Cir. 2004) (quoting Thomas v. Newton Int'l Enters., 42 F.3d 1266, 1269 (9th Cir. 1994)).  "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."  Primiano v. Cook, 598 F.3d 558, 564 (9th Cir. 2010).  To testify as an expert, an individual "need not be officially credentialed in the specific matter under dispute."  Massok v. Keller Indus., Inc., 147 F. App'x 651, 656 (9th Cir. 2005) (citing United States v. Garcia, 7 F.3d 884, 889-90 (9th Cir. 1993)).

On the other hand, "[u]nder Daubert, the trial court must act as a 'gatekeeper' to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards."  Ellis v.

Costco Wholesale Corp., 657 F.3d 970, 982 (9th Cir. 2011) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137, 145, 147-49 (1999)); see Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993). To satisfy Daubert, scientific evidence must be both reliable and relevant. 509 U.S. at 590-91, 597. The proponent of the expert bears the burden of proving admissibility. Lust By & Through Lust v. Merrell Dow Pharm., Inc., 89 F.3d 594, 598 (9th Cir. 1996).

The law pertaining to Daubert's reliability prong has been summarized as follows:

> Reliable testimony must be grounded in the methods and procedures of science and signify something beyond "subjective belief or unsupported speculation." Daubert, 509 U.S. at 590. The inferences or assertions drawn by the expert must be derived by the scientific method. Id. In essence, the court must determine whether the expert's work product amounts to "'good science.'" Daubert v. Merrell Dow Pharms., Inc., 43 F.3d 1311, 1315 (9th Cir. 1995) ("Daubert II") (quoting Daubert, 509 U.S. at 593). In Daubert, the Supreme Court outlined factors relevant to the reliability prong, including: (1) whether the theory can be and has been tested; (2) whether it has been subjected to peer review; (3) the known or potential rate of error; and (4) whether the theory or methodology employed is generally accepted in the relevant scientific community." Daubert, 509 U.S. at 593-94. The Supreme Court emphasized the "flexible" nature of this inquiry. Id. at 594. As later confirmed in Kumho Tire, "Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather the law grants a district court the same broad latitude when it decides how to determine reliability as [the court] enjoys in respect to its ultimate reliability determination." 526 U.S. at 141-42.

Abarca v. Franklin Cnty. Water Dist., 761 F. Supp. 2d 1007, 1021 (E.D. Cal. 2011). "The relevance prong under Daubert means that the evidence will assist the trier of fact to understand or determine a fact in issue." Henricksen v. ConocoPhillips Co., 605 F. Supp. 2d 1142, 1154 (E.D. Wash. 2009) (citing Daubert, 509 U.S. at 591-92).

**B.      Defendant's Motion Pursuant to F.R.E. 702/Daubert to Exclude the Opinions of Dr. Timothy Harrigan (ECF No. 152)**

Specialized seeks an order excluding all opinions and testimony of Icon's expert, Dr. Timothy Harrigan, relating to (1) his manual testing of bicycle seats and (2) finite element modeling ("FEA"), which is a computer-based analysis method. ECF No. 152. Specialized contends that Harrigan's manual testing of saddles is unreliable and irrelevant because it does not involve measurements, criteria, or controls; because it is based on his subjective determinations;

4

United States District Court
Northern District of California

and because it is unrelated to the loading that occurs during rider pedaling.  Id. at 3.  Specialized contends that the FEA model analyses are unreliable and irrelevant because they are based on incorrect assumptions regarding the structure and materials of the saddles and because Harrigan applied arbitrary loads that are not representative of the loads that occur during rider pedaling.  Id. Specialized does not argue that Harrigan is not qualified to be an expert in this case.

### 1.    Manual Testing

In order to assess whether the accused Specialized saddles infringe the relevant claims, Harrigan "visually studied the structural design" of the accused saddles and "manually tested" each one "by providing a load to the hinge on each of the saddles to observe and consider their mechanical characteristics."  Expert Report of Timothy P. Harrigan ScD MBA PE ("Harrigan Report"), ECF No. 194-1 at 7.  He "then observed the deflection characteristics at the hinge regions and the support portions resulting from the load."  Id.  He also "observed test riders on each of the accused Specialized saddles to assess how each rider would be positioned on the saddle, the interactions between the rider and the saddle, and the deflection characteristics of the saddle."  Id.

The thrust of Specialized's argument is that this analysis must be excluded because it is not sufficiently scientific — Harrigan's methodology has not been tested or peer-reviewed, and he did not take notes or collect data.  But "Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case."  Kumho Tire, 526 U.S. at 141; see also City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036, 1044 (9th Cir. 2014) ("[T]hese factors are meant to be helpful, not definitive, and the trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on the particular circumstances of the particular case." (internal quotation marks omitted)).

Here, Harrigan was tasked with assessing the structural characteristics of bicycle seats, and in particular with determining whether they include a "flexible area" that "allow[s] flexing to occur between each of the first and second support portions and the front portion so that each of the first and second support portions undergo substantially independent arcuate movement." Order Construing Claims of United States Patent Nos. 6,254,180 and 6,378,938 ("Claim

5

United States District Court
Northern District of California

Construction Order"), ECF No. 70 at 18.  In this circumstance, the Court finds "it to be a matter of common sense" that a visual and manual inspection would be one acceptable way for a mechanical engineer to assess the structural characteristics of a bicycle seat.  Correa v. Cruisers, a Div. of KCS Int'l, Inc., 298 F.3d 13, 26 (1st Cir. 2002).  The Court concludes that Harrigan's opinions based on his manual testing of bicycle saddles meet Daubert's reliability and relevance requirements.  Of course, the Daubert test "is not the correctness of the expert's conclusions but the soundness of his methodology."  City of Pomona, 750 F.3d at 1044.  Harrigan's testimony will be open to attack on cross-examination, and it will be up to the jury to decide the appropriate weight to give this evidence.

## 2.      FEA Analyses

Specialized does not argue that FEA is "junk science" or that it is never an appropriate methodology for testing the structural characteristics of bicycle saddles.  Rather, Specialized contends that Harrigan's analyses are not relevant or reliable because they are based on incorrect assumptions regarding the structure and materials of the saddles; because he erroneously modeled only one representative accused saddle and extrapolated his conclusions to cover all of the accused saddles; and because he applied arbitrary loads that are not representative of the loads that occur during rider pedaling.  ECF No. 152 at 3, 18.

In his report, Harrigan explains that, in his opinion, "the variations of the material, size, and design of the accused Specialized saddles do not create any meaningful difference as it relates to [his] infringement analysis because all of the . . . accused Specialized saddles have similar physical characteristics."  Harrigan Report at 11, 25.  He testified at his deposition that although the structure and materials of the saddles did differ from the inputs he used in his FEA analyses, these differences "didn't matter" because they had no effect on the pattern of deformations that demonstrated the presence of the hinge specified in the claim language.  Deposition of Timothy P. Harrigan ("Harrigan Dep."), ECF No. 192-3 at 229-40.  He explained, "In my professional opinion based on 30 years of doing finite element modeling, I didn't need that degree of accuracy to assess the coupling between the two sides, or the lack of it."  Id. at 234.  However, he did admit, "[I]f I had to do it again, I would just put in the right modulus."  Id. at 239.  With respect to the loads

6

1   used in the FEA analyses, Harrigan acknowledged that he used an "isolated simplified load" to

2   assess coupling.  Id. at 243-44.

3       Harrigan is an expert in "computational modeling in biomechanics" who has "used, relied

4   on and developed finite element modeling throughout [his] career."  Harrigan Report at 2.  He

5   acknowledges that the inputs he used in his computer modeling of the accused and prior art

6   saddles do not create perfect models of these objects, but he opines that his models are accurate

7   enough to inform his opinions concerning whether the saddles include a hinge allowing

8   independent, arcuate movement of the support portions.  Icon emphasizes that a numerical model

9   is valid "if the assumptions in the model are appropriate for the answer being sought," and in this

10  case, Harrigan needed only to determine whether a hinge exists, not measure specific amounts of

11  deformation.  ECF No. 190 at 21.  Taking into account Harrigan's report and testimony

12  concerning the level of precision necessary for an FEA analysis to be helpful in this situation, the

13  Court concludes that Harrigan's opinions will assist the trier of fact and that they are sufficiently

14  reliable to be admissible under Rule 702.  This is the type of "[s]haky but admissible evidence"

15  that must "be attacked by cross examination, contrary evidence, and attention to the burden of

16  proof, not exclusion."  Primiano, 598 F.3d at 564.

17      **C.    Plaintiff's Motion to Exclude Stephen M. Werner, Ph.D., P.E. (ECF No. 168)**

18      Plaintiff seeks an order excluding the testimony and opinions of Specialized's expert, Dr.

19  Stephen M. Werner, concerning indefiniteness, obviousness, and anticipation.  ECF No. 168 at 1.

20  Icon argues that: (1) Werner's testimony regarding indefiniteness of the '180 patent is untimely;

21  (2) Werner's invalidity opinions are conclusory; (3) Werner applied a legally erroneous

22  methodology to determine that the claims of the '938 patent are anticipated by prior art;

23  (4) Werner should be precluded from arguing that U.S. Patent No. 4,369,998 to Blase ("Blase"),

24  PCT Application No. PCT/EP95/01086 ("Urban"), and U.S. Patent No. 4,063,775 to Mesinger

25  ("Mesinger") have a hinge; (5) Werner should be precluded from relying on Exhibits S and T to

26  his expert report because they are not prior art; (6) the physical saddles examined by Werner are

27  not prior art; (7) Werner should not be permitted to reference litigation concerning foreign

28  counterparts to the asserted patents; (8) Werner should be precluded from relying on Italian Patent

United States District Court
Northern District of California

App. No. MI91 A 002879 ("Cassani") and a patent issued in 1895 to Perry ("Perry") as prior art;

(9) Werner should be precluded from relying on the combination of each of U.S. Patent No.

5,011,222 to Yates ("Yates") and U.S. Patent No. 4,429,915 to Flager ("Flager") with U.S. Patent

No. 4,108,462 to Martin ("Martin") as rendering the '938 patent obvious; and (10) Werner's non-

infringement opinions regarding the '180 patent should be excluded because they include

improper legal argument concerning claim construction.  ECF No. 168 at i-ii.  Icon does not attack

Werner's qualifications as an expert.  The Court considers these arguments in turn.

### 1.   Timeliness of Indefiniteness Defense

Icon contends that Werner's testimony that the '180 patent is indefinite must be excluded

because this testimony should have been disclosed at the claim construction stage.  ECF No. 168

at 3.  Following the parties' lead, the Court will address this issue below in connection with its

discussion of Icon's motion for summary judgment.

### 2.   Whether Invalidity Opinions are Conclusory

Icon contends that Werner's opinions concerning invalidity are conclusory and therefore

impermissible under Federal Rule of Civil Procedure 26, Federal Rule of Evidence 702, and

Daubert.  ECF No. 168 at 4.  First, Icon argues that Werner's opinion that a person of ordinary

skill in the art "would have at least a college degree and, in addition, have some educational

training in engineering or several years of experience in mechanical design" is an unsupported

conclusion because Werner does not discuss the factors he considered to reach that conclusion.

ECF No. 168 at 4-5 (quoting Expert Report of Stephen M. Werner, Ph.D., P.E. ("Werner Report"),

ECF No. 154-1 ¶¶ 28, 147).  The Court finds that Werner's identification of the level of ordinary

skill in the art is proper.  See Neutrino Dev. Corp v. Sonosite, Inc., 410 F. Supp. 2d 529, 536 (S.D.

Tex. 2006) (expert's statement that "she considered the level of ordinary skill in the art to be a

person who 'has been trained and passed one's credentialing examinations' . . . is sufficient to

allow the jury to determine whether this is the appropriate level of ordinary skill in the art").  None

of the cases Icon cites stand for the proposition that an expert's report must include a discussion of

the factors he used to evaluate the level of ordinary skill in the art.  See Gen. Elec. Co. v. Joiner,

522 U.S. 136, 146 (1997); Envtl. Designs, Ltd. v. Union Oil Co. of California, 713 F.2d 693, 696-

United States District Court
Northern District of California

1   97 (Fed. Cir. 1983); Elder v. Tanner, 205 F.R.D. 190, 193 (E.D. Tex. 2001).

2          Icon also contends that Werner's testimony that the '180 and '938 patents are obvious is

3   conclusory because he does not explain how or why the prior art references he discusses (i.e. the

4   commercially sold Mythos saddle with Blase, Urban, or Mesinger; and Yates or Flager in

5   combination with Martin) would be combined.  ECF No. 168 at 5-8.  Icon argues that Werner has

6   therefore failed to comply with the disclosure requirements of Federal Rule of Civil Procedure

7   26(a)(2)(B) and the requirements for admissible expert testimony under Federal Rule of Evidence

8   702 and Daubert.  Icon further accuses Werner of improperly "using the invention as a roadmap to

9   find its prior art components," rather than considering the claimed invention "as a whole."  Ruiz v.

10  A.B. Chance Co., 357 F.3d 1270, 1275 (Fed. Cir. 2004).

11         Upon review of Werner's report, the Court concludes that his obviousness analysis is

12  sufficient.  Werner adequately discloses the precise prior art references that would be combined

13  and how and why these combinations would be made.  The Court will not discount Werner's

14  obviousness opinions on the basis that, at his deposition, he agreed "in general" with counsel's

15  suggestion that he "used the claims as a road map to find the - find the elements in the prior art."

16  Deposition of Stephen M. Werner, Ph.D, P.E. ("Werner Dep."), ECF No. 168-5 at 19.  In Ruiz, the

17  Federal Circuit emphasized the importance of assessing the invention "as a whole," rather than

18  finding a prior art reference containing each component part "and on that basis alone declar[ing]

19  the invention obvious."  357 F.3d at 1275.  Ruiz does not proscribe looking for individual claim

20  elements in the prior art, and Werner's deposition testimony does not establish that he failed to

21  consider the inventions as a whole.

22         Third, Icon attacks Werner's anticipation opinions as insufficiently detailed, and his claim

23  charts as improper because, Icon contends, counsel prepared them.  ECF No. 168 at 8-10.  The

24  Court concludes that the claim charts appended to Werner's report are sufficiently detailed to

25  satisfy Specialized's disclosure requirements and to establish that his opinions will be helpful to

26  the jury.  The Court will not exclude Werner's anticipation opinions based on Icon's allegation

27  that Werner did not prepare his own claim charts.  Werner testified that "other than the

28  formatting," the charts are his original work product.  Werner Dep. at 15.  It is not surprising that

United States District Court
Northern District of California

9

the charts are similar to claim charts prepared by counsel earlier in the litigation, as these charts necessarily address the same claims and prior art references.

### 3.    Anticipation of the '938 Patent

Icon argues that Werner's opinion that the claims of the '938 patent are anticipated by Martin, U.S. Patent No. 5,286,082 to Hanson ("Hanson"), Yates, Flager, Cassani, and the commercially sold Mythos, Flite and Turbo saddles is flawed because it is based on the argument that the patent is anticipated if it is infringed by the accused product, and this argument has been expressly rejected by the Federal Circuit. See Tate Access Floors, Inc. v. Interface Architectural Res., Inc., 279 F.3d 1357, 1367 (Fed. Cir. 2002); Zenith Elecs. v. PDI Commc'n Sys., 522 F.3d 1348, 1363 (Fed. Cir. 2008). ECF No. 168 at 10-12. Werner's analysis is distinguishable from the approach proscribed in Tate and Zenith. He does not argue that the '938 patent is invalid because the prior art is identical to an infringing product. See Zenith, 522 F.3d at 1363. Rather, he assumes that Icon's understanding of the construed claims is correct, and then proceeds to demonstrate how, in his opinion, each element of the claims is found in the prior art. He does not dodge the claim language and simply compare the accused product to the prior art, as Tate and Zenith forbid.

### 4.    Hinges in Blase, Urban, and Mesinger

Icon argues that Werner should be precluded from opining that Blase, Urban, and Mesinger include a hinge because he has not identified the hinge area in each reference. ECF No. 168 at 12-13. Werner's report recites the Court's construction of the hinge terms, describing a flexible area separating each of the support portions from the front portion to allow flexing to occur between each of the first and second support portions and the front portion so that each of the first and second support portions undergo substantially independent arcuate movement. Werner Report ¶ 54. Werner then describes Blase, Urban, and Mesinger, using words and figures, and states that each has a front portion, two support portions, and hinges allowing this movement. Id. ¶¶ 58-81. This is sufficient to put Icon on notice that Werner will opine that Blase, Urban, and Mesinger each include hinges, i.e. flexible areas located between the front and support portions of the saddle. Icon apparently faults Werner for failing to draw arrows to the central parts of the

10

United States District Court
Northern District of California

bicycle seats in his figures, as he did in his depictions of the prior art commercial saddles, id. ¶ 82, but the Court will not exclude his opinion that these prior art references disclose hinges on this basis.

### 5.  Exhibits S and T

Icon contends that Exhibits S and T to Werner's expert report, as well as paragraphs 88, 89, and 93 of the report and any related testimony, should be excluded because these exhibits are not, on their face, prior art publications under 35 U.S.C. § 102(b).  ECF No. 168 at 13-14. Following the parties' lead, the Court will address this issue below in its discussion of Icon's motion for summary judgment.

### 6.  Physical Saddles

Icon contends that the portions of Werner's report in which he relies on physical prior art saddles must be stricken because Specialized and Werner cannot establish that the saddles Werner examined were sold, offered for sale, or publicly available more than one year prior to the effective filing dates of the patents, and therefore they cannot be considered prior art under 35 U.S.C. § 102(b).  ECF No. 168 at 14-16.  This question will also be addressed below in the Court's discussion of Icon's motion for summary judgment.

### 7.  Litigation of Foreign Counterparts

Icon asserts that Werner's opinions should be excluded to the extent he relies on materials from litigation in Italy concerning related patents, because these materials are irrelevant to the asserted U.S. patents and the U.S. patent law at issue in this case.  ECF No. 168 at 17-18.  It is true that "the theories and laws of patentability vary from country to country, as do examination practices" and that "[c]aution is required" when considering foreign patent proceedings, Heidelberger Druckmaschinen AG v. Hantscho Commercial Prods., Inc., 21 F.3d 1068, 1072 n.2 (Fed Cir. 1994), but it does not follow that descriptions of the prior art in Icon's Italian technical report and the factual findings of the Italian expert with respect to the prior art are not relevant. The Court will "not defer to decisions in foreign courts or patent offices on questions of validity." Oki Am., Inc. v. Advanced Micro Devices, Inc., No. 04-cv-03171-CRB, 2006 WL 3290577, at *8 n. 2 (N.D. Cal. Nov. 13, 2006).  But it will not exclude all opinions based in part upon materials

11

introduced in related litigation abroad.

### 8.      Cassani and Perry

Icon challenges Werner's reliance on the Cassani and Perry patents because they were not included in Specialized's invalidity contentions.  ECF No. 168 at 18-20.  Specialized agrees that Werner may not rely on Perry, but seeks permission to amend its invalidity contentions to include Cassani.  ECF No. 185 at 14.  Specialized explains that after the Court issued its claim construction order, the parties stipulated to amendments to their respective contentions and Specialized disclosed to Icon a detailed claim chart on the Cassani reference.  Id.  When Specialized filed its amended contentions, however, this chart was inadvertently omitted.  Id. Specialized's request to amend its invalidity contentions comes extremely late, after the close of discovery, and is therefore denied.  The Cassani claim chart attached to Werner's report and Werner's opinions regarding Cassani shall be stricken.

### 9.      Yates and Flager with Martin

Icon also contends that the combination of each of Yates and Flager with Martin was not disclosed in Specialized's invalidity contentions as rendering the '938 patent obvious.  ECF No. 168 at 20.  This issue will be addressed below in the Court's discussion of Icon's motion for summary judgment.

### 10.      Argument Regarding Non-infringement of '180 Patent

Finally, Icon contends that Werner's non-infringement opinions regarding the '180 patent include improper legal argument concerning the proper construction of the "hinge" terms and improper comparison of the embodiments in the specification with the accused products.   ECF No. 168 at 20-24.  Icon seeks to exclude the opinions contained in Sections VI.C.1-2 of Werner's Rebuttal Report on this basis.  ECF No. 203 at 13 n.1.  See Rebuttal Expert Report of Stephen M. Werner ("Werner Rebuttal Report"), ECF No. 168-8.  Specialized responds that Werner properly adopted the Court's claim constructions and simply provided his non-infringement opinions based on how a person of ordinary skill in the art would understand the Court's constructions.  ECF No. 185 at 15-18.  In particular, Specialized notes that the Court did not construe "substantially independent arcuate movement," and contends that it is appropriate for Werner to provide his

United States District Court
Northern District of California

12

United States District Court
Northern District of California

1    opinion that the accused saddles to not move enough to have a hinge that allows this degree of

2    flexing.  Id. at 16.

3          The construction of claims in light of the specification and prosecution history is a

4    question for the court, not for the jury.  Markman v. Westview Instruments, Inc., 517 U.S. 370,

5    387 (1996).  At trial, parties may introduce evidence as to the plain and ordinary meaning of terms

6    not construed by the court, as long as the evidence does not amount to arguing claim construction

7    to the jury.  MediaTek Inc. v. Freescale Semiconductor, Inc., No. 11-cv-5341-YGR, 2014 WL

8    971765, at *4 (N.D. Cal. Mar. 5, 2014).  "Arguing claim construction to the jury is inappropriate

9    because it risks confusion and the likelihood that a jury will render a verdict not supported by

10   substantial evidence."  Id. (quoting Apple v. Samsung, No. 12-cv-630-LHK, 2014 WL 660857, at

11   *3 (N.D. Cal. Feb. 20, 2014)); see also Cordis Corp. v. Boston Scientific Corp., 561 F.3d 1319,

12   1337 (Fed. Cir. 2009) ("We have held that it is improper to argue claim construction to the jury

13   because the risk of confusing the jury is high when experts opine on claim construction." (internal

14   quotation marks omitted)).  In Mediatek, the court excluded an expert's opinions as improperly

15   arguing claim construction to the jury where the expert "relie[d] heavily on the prosecution

16   history, specifications, and even provisional applications to explain and expound upon a specific

17   meaning and/or requirements of the terms identified."  Id. at *5.  Here, the Court concludes that

18   the challenged portions of Werner's Rebuttal Report, which rely heavily on Werner's

19   interpretation of the specifications and preferred embodiments of the '180 patent, similarly include

20   improper claim construction arguments.  Icon's motion to exclude these opinions is therefore

21   granted.

22        **D.      Plaintiff's Motion to Exclude James McIlvain and Paragraphs 90, 104, 106,**

23   **127, 159, 163, 194 and 203 of the Expert Rebuttal Report of Jeffrey Kinrich (ECF No. 169)**

24          Icon moves for an order excluding the expert report and testimony of James McIlvain and

25   the portions of the Expert Rebuttal Report of Jeffrey Kinrich that rely on McIlvain's opinions.

26   ECF No. 169 at 1-2.  Icon contends that McIlvain is not an expert on the commercial success of

27   Specialized's saddles or demand for Specialized's saddles compared to Nelson's saddles, and that

28   his opinions are unreliable and irrelevant because they are based on his subjective beliefs.

"The Ninth Circuit has found opinions based on an expert's experience in the industry to be proper: 'When evaluating specialized or technical expert opinion testimony, the relevant reliability concerns may focus upon personal knowledge or experience.'" GSI Tech., Inc. v. Cypress Semiconductor Corp., No. 11-cv-03613-EJD, 2015 WL 364796, at *2 (N.D. Cal. Jan. 27, 2015) (quoting United States v. Sandoval-Mendoza, 472 F.3d 645, 655 (9th Cir. 2006)). "Subjective beliefs and opinions are proper expert testimony." Id. Here, McIlvain has extensive experience in the cycling equipment industry as journalist for and editor of cycling magazines. In this role, he has conducted product reviews and comparisons of cycling gear. His experience in the industry qualifies him to testify about his impressions of the Specialized and Nelson saddles he tested. See United States v. Brooks, 610 F.3d 1186, 1195-96 (9th Cir. 2010) ("The fact that Detective Hein lacked an advanced degree, supervisory experience, previous experience as an expert witness, or relevant publications did not render her unfit to provide expert testimony.").

The Court concludes that McIlvain's opinions will be helpful to the jury and that they are sufficiently reliable to be admissible. The weight to be accorded his testimony, in view of the fact that McIlvain does not purport to have a sophisticated understanding of patent law or engineering, did not consult other experts, and did not conduct any type of market study in forming his opinions, is a question for the jury. See Alaska Rent-A-Car, Inc. v. Avis Budget Grp, Inc., 738 F.3d 960, 969-70 (9th Cir. 2013) ("Basically, the judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable. The district court is not tasked with deciding whether an expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury.").

Because the Court denies this motion insofar as it seeks the exclusion of McIlvain's opinions, it also denies Icon's request to exclude any opinions of Kinrich that rely on McIlvain.

**E.    Plaintiff's Motion to Exclude the Testimony of Stephen G. Kunin and Bar Testimony Attacking the Competency of the Patent Office about Patent Law or Practice (ECF No. 170)**

Icon seeks an order excluding the testimony of Specialized's expert, Stephen G. Kunin, who plans to explain the policies, practices, and procedures of the U.S. Patent and Trademark

14

Office ("PTO"); describe the prosecution history of the '180 patent; and express his opinion as to the proper level of deference to be given to the PTO in view of this file history.  ECF No. 170 at 1, 10; see Expert Report of Stephen G. Kunin ("Kunin Report"), ECF No. 170-2.

The Court will permit Kunin, who spent more than thirty-four years working at the PTO, to testify about the general practices and procedures of that office.  See Szoka v. Woodle, No. 02-cv-5524, 2004 WL 5512964, at *3 (N.D. Cal. June 7, 2004) ("Given the complexity of patent litigation, courts have regularly permitted expert testimony by patent attorneys on a range of issues, including proceedings before the Patent and Trademark Office (PTO)"); see also Bausch & Lomb, Inc. v. Alcon Labs., Inc., 79 F. Supp. 2d 252, 256 (W.D.N.Y. 2000) ("Obviously PTO procedures are foreign to the average person, and it may be helpful to the jury to hear someone experienced in those procedures explain how they operate in terms that a layperson can understand.").  Kunin may also testify about the particular patent application at issue, to the extent that Specialized seeks to present evidence that there were defects in the process and to suggest that deference to the PTO's determination may not be appropriate in this case.  Bristol-Myers Squibb v. Rhone-Poulenc Rorer, 326 F.3d 1226, 1235 n.8 (Fed. Cir. 2003); Bausch & Lomb, 79 F. Supp. 2d at 255.  When a challenger "has evidence that there actually were defects in the particular application process at issue in this case, thus suggesting that deference to the PTO's determination may not be appropriate, it may seek to offer such evidence."  Bausch & Lomb, 79 F. Supp. 2d at 255.

Kunin may not, however, offer generalized testimony about quotas, time pressures, or the problems examiners generally face in completing their work at the PTO, as "the purpose of this testimony would be to attempt to undermine the presumption of validity under 35 U.S.C. § 282 by inviting the jury to speculate about possible defects, errors, or omissions in the application process that led to the issuance of the patent-in-suit."  Bausch & Lomb, 79 F. Supp. 2d at 255-56; see also Applied Materials, Inc. v. Advanced Semiconductors Materials Am., Inc., No. 92-20643, 1995 WL 261407, at *3 (N.D. Cal. April 25, 1995) ("Testimony about overwork, quotas, awards or promotions at the Patent Office, or the number of patents that issue annually or insinuating that the Patent Office does not do its job properly is . . . irrelevant speculation and would constitute an inappropriate attack on the Patent Office.").  Kunin also may not speculate about what the PTO

would have done had specific prior art references been brought to the examiner's attention or offer legal opinions about the appropriate level of deference to be given to the PTO's determination of patentability in this case.  See Daubert, 509 U.S. at 599 (requiring more than "subjective belief or unsupported speculation" from expert testimony); United States v. Weitzenhoff, 35 F.3d 1275, 1287 (9th Cir. 1993) ("It is well settled . . . that the judge instructs the jury in the law."); Applied Materials, 1995 WL 261407, at *3 (excluding former Patent Office employee's testimony about what an examiner would have done if he had different information).

### F.   Defendant's Motion Pursuant to F.R.E. 702/Daubert to Exclude the Expert Testimony of Frank Bernatowicz (ECF No. 171)

Specialized seeks an order excluding the reasonable royalty opinions of Icon's damages expert, Frank Bernatowicz, on the basis that they are based on unreliable methodologies and rely on inappropriate evidence, no evidence, or evidence made up by Bernatowicz.  ECF No. 171 at 2. Specifically, Specialized contends that Bernatowicz's opinion that the patented inventions are the "driving factor" of Specialized's accused sales is unsupported and unreliable; Bernatowicz's determination of the baseline royalty rate is fundamentally flawed; Bernatowicz's Georgia Pacific analysis is arbitrary and unreliable; Bernatowicz's apportionment analysis is fundamentally flawed; Bernatowicz improperly failed to separately analyze the two patents-in-suit; and Bernatowicz's report violates Federal Rule of Civil Procedure 26 because he failed to disclose the basis for statements that are fundamental to his opinions and because he failed to disclose phone conversations with other witnesses that he considered and relied upon in forming his opinions. Specialized does not challenge Bernatowicz's qualifications as a damages expert or argue that his opinions are irrelevant.  Rather, Specialized urges that Bernatowicz's opinions should be excluded because they are "unsupported, unreliable, or grounded in junk science."  ECF No. 171 at 22.

Bernatowicz is a Certified Public Accountant, a Registered Professional Engineer, and an experienced damages expert.  In preparing his damages report, he utilized the Georgia Pacific framework to calculate a reasonable royalty based upon a hypothetical negotiation between a willing licensor and licensee.  Expert Report of Frank A. Bernatowicz ("Bernatowicz Report"), ECF No. 223-7  ¶¶ 35-114; see Georgia-Pacific Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116,

16

1120 (S.D.N.Y. 1970).  The Court notes at the outset that "any reasonable royalty analysis 'necessarily involves an element of approximation and uncertainty.'"  Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1325 (Fed Cir. 2009) (quoting Unisplay, S.A. v. Am. Elec. Sign Co., Inc., 69 F.3d 512, 517 (Fed. Cir. 1995)).  "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."  Primiano, 598 F.3d at 564.

The Court concludes that most of Specialized's criticisms of Bernatowicz's opinions go to the weight that a jury should give his opinions, rather than their admissibility, and that these arguments are therefore improper bases to exclude Bernatowicz's expert opinions.  In particular, "the question of a reasonable royalty rate and the similarity of licensing agreements as a basis of reference for arriving at a reasonable royalty rate, are questions of fact."  Sargent Mfg. Co. v. Cal-Royal Prods., Inc., No. 08-cv-408 (VLB), 2012 WL 3101691, at *6 (D. Conn. July 27, 2012) (citing Uniloc USA, Inc. v. Microsoft Corp., 632 F.3d 1292 (Fed. Cir. 2011); ResQNet.com, Inc. v. Lansa, Inc., 594 F.3d 860, 869 (Fed. Cir. 2010)); see also Virnetx, Inc. v. Cisco Sys., Inc., 767 F.3d 1308, 1331 (Fed Cir. 2014) (explaining that "the degree of comparability" of license agreements was a factual issue best addressed by cross examination, rather than exclusion, and that the jury was "entitled to hear the expert testimony and decide for itself what to accept or reject").

Upon review of Bernatowicz's report, the Court concludes that his opinions pass muster under the reliability and relevance requirements of Daubert and Rule 702.  Specialized may challenge Bernatowicz's conclusions with respect to the "driving factor" of Specialized's accused sales, his royalty rate calculations, his apportionment analysis, and his decision to analyze the patents together based on his assessment of comparable licenses on cross-examination.

Specialized also argues that Bernatowicz's opinions must be excluded because he has failed to comply with the disclosure requirements of Federal Rule of Civil Procedure 26.  ECF No. 171 at 20-22.  Courts enforce the disclosure requirement by excluding from use at trial information that was not properly disclosed, "unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

United States District Court
Northern District of California

United States District Court
Northern District of California

Specialized argues that Bernatowicz failed to disclose the basis for his statements that the patented inventions are "important and essential" and "enabled" Specialized to sell accused saddles, and that the patented inventions confer "comfort and performance," which is the "driving factor" for Specialized's accused sales.  ECF No. 171 at 20 (citing Bernatowicz Report ¶ 45). Icon responds that Bernatowicz's conclusions "were fully supported by his assessment of the industry, Specialized's marketing material, and the patents-in-suit."  ECF No. 196 at 25.  With the exception of the phone conversations discussed below, there is no suggestion in the briefing on this motion that Bernatowicz will seek to present additional bases for his opinions beyond those disclosed in his expert report.  To the extent that he seeks to do so, Specialized may move for exclusion of such testimony at that time.

Specialized's argument that Bernatowicz should not be permitted to rely on information gleaned from conversations with witnesses Paul Nelson, Peter Strover, and Timothy Harrigan is well-taken.  See ECF No. 171 at 20-22.  Bernatowicz's report does not mention these phone conversations.  Specialized apparently learned about them during Bernatowicz's deposition, which took place after Harrigan's deposition.  Id.  Icon argues that Bernatowicz was not required to disclose these conversations because they simply provided "a bit more color" to his understanding of the case, and that any improper failure to disclose was harmless both because Bernatowicz did not learn any new facts or obtain any new data in these conversations and because Specialized had the opportunity to question Bernatowicz about them during his deposition.  ECF No. 196 at 25.

Rule 26 requires expert witnesses to disclose "a complete statement of all opinions the witness will express and the basis and reasons for them," as well as "the facts or data considered by the witness in forming them."  Fed. R. Civ. P. 26(a)(2)(B).  To the extent Bernatowicz relied on these phone conversations as part of the basis of his opinions, they should have been timely disclosed to Specialized.  The Court will therefore grant Specialized's request to preclude Bernatowicz from relying on these conversations in his testimony at trial.

**G.      Plaintiff's Motion to Exclude Roger Minkow, M.D. (ECF No. 173)**

Icon seeks an order excluding the testimony of Specialized's expert, Roger Minkow, M.D., because his opinions are unreliable and will not assist the trier of fact in determining whether the

accused products infringe the '938 patent. ECF No 173. Minkow is a medical doctor who has been a consultant to Specialized on the ergonomics of bicycle seats and other cycling equipment for more than fifteen years. His rebuttal report responds to the opinion of Icon's expert, Harrigan, that the accused saddles infringe the asserted claims of the '938 patent. Icon argues that: (1) Minkow's report is inadmissible because it was written by Specialized's counsel in violation of Federal Rule of Civil Procedure 26(a)(2)(B)(ii); (2) Minkow failed to apply the proper level of ordinary skill in the art; (3) Minkow should not be allowed to rely on the pressure map included in his report; (4) Minkow should not be allowed to testify on the shapes and contours of the accused saddles; and (5) Minkow should be excluded as a sanction pursuant to Federal Rule of Civil Procedure 37(c)(1). ECF No. 173 at i.

Icon argues first that Minkow's report must be excluded because "the only reasonable conclusion" from Minkow's deposition testimony is that he did not write his report. ECF No. 209 at 6. See Numatics, Inc. v. Balluff, Inc. & H.H. Barnum Co., No. 13-11049, 2014 WL 7211167, at *5-7 (E.D. Mich. Dec. 16, 2014) (excluding the testimony of a proposed expert based on the "inescapable" conclusion that he "is nothing more than a 'highly qualified puppet' and the opinions in his report do not reflect his own reasoned views of the case" (citing DataQuill Ltd. v. Handspring, Inc., No. 01 C 4635, 2003 WL 737785, at *4 (N.D. Ill. Feb. 28, 2003))). In particular, Icon contends that at his deposition, Minkow was unable to clearly discuss the opinions in his report without coaching from Specialized's counsel and admitted that counsel typed the report for him. ECF No. 173 at 4-5.

Having reviewed Minkow's report and testimony, the Court concludes that Minkow's statements at his deposition do not establish that counsel impermissibly "ghostwrote" Minkow's report. Minkow testified that "counsel typed the report up," but that "[t]he information in the report came from me," including "[t]he ergonomics, the illustrations, the interpretation." Deposition of Roger Minkow, M.D. ("Minkow Dep."), ECF No 184-1 at 8. Minkow acknowledged that he "didn't write the law portions of this in that vernacular," but insisted that "the ideas and the illustrations came from me." Id. at 8-9. Because Minkow provided the information, analyses, and opinions expressed in his report, the Court will not exclude him as

United States District Court
Northern District of California

1    "[a]n expert witness who is merely a party's lawyer's avatar."[1]  Numatics, 2014 WL 7211167, at

2    *3.

3           The Court also finds unconvincing Icon's argument that Minkow's opinions must be

4    excluded because he did not consider the level of ordinary skill in the art.  ECF No. 173 at 5-6.

5    Icon relies on Sundance, Inc. v. DeMonte Fabricating Ltd., 550 F.3d 1356 (Fed Cir. 2008), in

6    which the Federal Circuit explained:

7               Patent claims are construed from the perspective of one of ordinary
                skill in the art.  For the purposes of the doctrine of equivalents,
8               identification of the claim elements as well as the determination of
                infringement itself are done from the perspective of one of ordinary
9               skill in the art. What a prior art reference discloses or teaches is
                determined from the perspective of one of ordinary skill in the art.
10              Whether a patent claim would have been obvious in light of prior art
                references is determined from the perspective of one of ordinary
11              skill in the art.

12   Id. at 1361 n.3 (internal citations omitted).  But Minkow presented only a literal infringement

13   analysis.  Specifically, he compared the claims with the accused saddles and gave his opinion

14   about whether the saddles are contoured to match the shape of the gluteus maximus muscles,

15   whether they compress soft tissue outside the ischial bones, and whether they permit a rider to sit

16   upright with his backbone arranged generally vertically.  These opinions, presented by a medical

17   doctor who has extensive experience consulting with Specialized about the ergonomic advantages

18   of the accused saddles, is relevant, reliable, and will be helpful to the jury.  There is no basis to

19   exclude these opinions because Minkow did not discuss his interpretation of the level of ordinary

20   skill in the art.

21          The Court will not exclude Minkow's testimony concerning a "representative" pressure

22   map of an accused saddle.  He testified at his deposition that he has experience reviewing such

23   pressure maps, that he is generally familiar with the testing performed to produce such maps, and

24   that he could identify the map in his report as being a pressure map of one of Specialized's

25   saddles.  This knowledge is sufficient to satisfy Rule 702's requirement that an expert opinion

26   must be based on "sufficient facts or data" to be presented to the jury.  Fed. R. Evid. 702(b).  Icon

27   _____

28   [1] Moreover, if this Court excluded every expert whose report included some contribution from
     counsel, there would be very few experts testifying at trial.

1   does not argue that pressure maps are irrelevant or that studying them is an unreliable

2   methodology – indeed, Icon's own expert, Harrigan, relies heavily on such maps.  Whether

3   Minkow's inability to identify precisely which saddle the map represents makes his testimony less

4   credible is a question for the jury.

5       The Court also will not exclude Minkow's testimony regarding the shapes and contours of

6   the accused saddles.  Although Icon describes this testimony as unacceptably conclusory, in fact,

7   Minkow's report provides a detailed explanation, including illustrations, of his opinion that the

8   contour of the accused saddles does not match the contour of the gluteus maximus muscles.  His

9   opinions are properly explained and may be presented to the jury.  Icon's argument that Minkow

10  failed to fully consider the Court's claim construction, which describes abutment segments

11  "contoured to provide a generally curved profile, matching the contour of the gluteus maximus

12  muscles *adjacent a person's ischial bones*" is a proper topic for cross-examination.  Claim

13  Construction Order at 20 (emphasis added).

14      Finally, the Court denies Icon's request that Minkow's opinions be excluded as a sanction

15  pursuant to Federal Rule of Civil Procedure 37(c)(1).  ECF No. 173 at 8-9.  Icon contends that

16  Minkow's opinions are subjective, personal impressions that should have been disclosed during

17  fact discovery.  Id.  Specialized acknowledges that Minkow was originally designated as a fact

18  witness, and that in his fact discovery deposition, he truthfully stated that he had not been asked to

19  serve as an expert in this case.  ECF No. 183 at 7. Specialized later timely disclosed its decision to

20  designate Minkow an expert, and Icon had the opportunity to depose him as an expert.  The Court

21  concludes that Minkow's opinions are proper expert testimony and that they will be helpful to the

22  jury in evaluating the characteristics of the accused saddles.  Minkow was properly disclosed and

23  deposed as an expert.  Accordingly, there has been no improper "end-around the requirements of

24  Rule 26(a)(1)" and sanctions would be inappropriate.  ECF No. 173 at 9.

25  **IV.    MOTIONS FOR SUMMARY JUDGMENT**

26      The Court will next consider each party's motion for summary judgment.  Specialized

27  moves for summary judgment of: (1) invalidity of Claims 1, 3-6, 12, 14, 15, 17, 21, and 22 of the

28  '180 patent; (2) non-infringement of Claims 1, 3-6, 12, 14, 15, 17, 21, and 22 of the '180 patent;

United States District Court
Northern District of California

21

(3) non-infringement of Claims 1-3, 5, and 11-14 of the '938 patent; and (4) laches barring Icon's pre-suit claimed damages for alleged infringement of the '180 and '938 patents.  ECF No. 153 at 1.  Icon moves for summary judgment in its favor on: (1) Specialized's defense of failure to mark; (2) Specialized's defense of lack of standing; (3) Specialized's defense of laches; (4) obviousness of the '180 and '938 patents; (5) indefiniteness of the '180 and '938 patents; (6) anticipation of the '938 patent based on Martin, Yates, West, Flager, Cassani, Mythos, Flite, and Turbo; and (7) whether the Mythos, Turbo, Turbomatic, and Flite saddles and Exhibits S and T to Werner's report are prior art.  ECF No. 175 at i.

### A.      Legal Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P 56(c).  An issue is "genuine" only if there is sufficient evidence for a reasonable factfinder to find for the non-moving party, and "material" only if the fact may affect the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  All reasonable inferences must be drawn in the light most favorable to the non-moving party.  Olsen v. Idaho State Bd. Of Med., 363 F.3d 916, 922 (9th Cir. 2004).  These standards apply with full force to summary judgment motions involving patent claims.  See Union Carbide Corp. v. Am. Can Co., 724 F.2d 1567, 1571 (Fed. Cir. 1984).

### B.      Specialized's Motion for Summary Judgment (ECF No. 153)

#### 1.      Invalidity of the '180 Patent

##### a.      Legal Standard

Patents are presumed valid.  35 U.S.C. § 282(a).  A party challenging the validity of a patent bears the burden of proving invalidity by clear and convincing evidence.  Pfizer, Inc. v. Apotex, Inc., 480 F.3d 1348, 1359 (Fed. Cir. 2007).  "Both anticipation under § 102 and obviousness under § 103 are two-step inquiries."  Medichem, S.A. v. Rolabo, S.L., 353 F.3d 928, 933 (Fed. Cir. 2003).  The first step is claim construction.  Id.  The second step requires a comparison of the properly construed claims to the prior art.  Id.

For a claim to be anticipated under § 102, and thus invalid, "each claim element must be

disclosed, either expressly or inherently, in a single prior art reference, and the claimed

arrangement or combination of those elements must also be disclosed, either expressly or

inherently, in that same prior art reference."  Therasense, Inc. v. Becton, Dickinson & Co., 593

F.3d 1325, 1332-33 (Fed. Cir. 2010).  "Inherent anticipation requires that the missing descriptive

material is necessarily present, not merely probably or possibly present, in the prior art."  Trintec

Indus., Inc. v. Top-U.S.A. Corp., 295 F.3d 1292, 1295 (Fed. Cir. 2002) (internal quotation marks

omitted).  Whether prior art anticipates the accused device is a question of fact.  Orion IP, LLC v.

Hyundai Motor Am., 605 F.3d 967, 974 (Fed. Cir. 2010).

Under 35 U.S.C. § 103, a patent claim is invalid as obvious "if the differences between the

claimed invention and the prior art are such that the claimed invention as a whole would have been

obvious before the effective filing date of the claimed invention to a person having ordinary skill

in the art to which the claimed invention pertains."  To determine whether this test is met, the

Court examines four factors: (1) the scope and content of the prior art; (2) the differences between

the prior art and the claims at issue; (3) the level of ordinary skill in the pertinent art; and (4) any

relevant secondary considerations (i.e., objective indicia of non-obviousness).  KSR Int'l Co. v.

Teleflex, Inc., 550 U.S. 398, 406 (2007) (quoting Graham v. John Deere Co. of Kansas City, 383

U.S. 1, 17-18 (1966)).  Importantly, "a patent composed of several elements is not proved obvious

merely by demonstrating that each of its elements was, independently, known in the prior art."

KSR, 550 U.S. at 418.  On the other hand, "when a patent simply arranges old elements with each

performing the same function it had been known to perform and yields no more than one would

expect from such an arrangement, the combination is obvious."  Id. at 417 (internal quotation

marks omitted).

The Federal Circuit has often employed the "teaching, suggestion, or motivation" ("TSM")

test to determine whether a particular combination of prior art would have been obvious to one of

ordinary skill in the art at the time of the invention.  See In re Translogic Tech., Inc., 504 F.3d

1249, 1259-60 (Fed. Cir. 2007).  Under that test, a court asks whether the prior art would have

provided a motivation, teaching, or suggestion to combine aspects of the prior art.  Id. at 1259.

The U.S. Supreme Court has, however, cautioned that the TSM test should be applied in a flexible,

United States District Court
Northern District of California

1  non-rigid fashion, taking into account "common sense" and "the inferences and creative steps that

2  a person of ordinary skill in the art would employ."  KSR, 550 U.S. at 418-21.

3      Specialized contends that the '180 patent is invalid as both anticipated and obvious.  The

4  Court considers these arguments in turn.

### b.     Anticipation of Claim 1 of the '180 Patent

### i.     Blase

7      Specialized argues first that Blase discloses every limitation of Claim 1 of the '180 patent,

8  which claims a support system including: (1) two support portions; (2) a front portion coupled to

9  the support portions; and (3) "a hinge between the first and second support portions and the front

10 portion for allowing each of the first and second support portions to undergo substantially

11 independent arcuate movement having a component at least in a substantially vertical plane when

12 the rider is seated on the support portions and performing a pedaling motion."  ECF No. 153 at 10-

13 12.

14     Icon disputes that Blase anticipates Claim 1.  ECF No. 192 at 4-6.  In particular, Icon

15 asserts that Blase discloses an undercarriage of a bicycle seat, not a bicycle seat or support system,

16 and that Blase does not disclose a flexible area separating each of the support portions from the

17 nose, as required by the Court's claim construction order.  See Claim Construction Order at 18

18 (construing the "hinge" term in Claim 1 to require "at least one flexible area separating each of the

19 support portions from the front portion to allow flexing to occur.").

20     The Court finds that summary judgment of anticipation by Blase is unwarranted because

21 there are conflicts in the expert testimony concerning whether Blase includes the required hinge

22 element.  Specifically, although Specialized's expert identifies a hinge in this prior art reference,

23 Icon's expert, Harrigan, has opined that the movement in Blase occurs throughout the wire

24 undercarriage of the seat, so that it does not include a "flexible area *separating* each of the support

25 portions from the front portion."  Claim Construction Order at 18; see also id. at 6 ("Because the

26 hinges, support portions, and front portion are claimed as distinct elements, they are discrete and

27 must be individually met for purposes of finding infringement.").  Harrigan relies on his FEA

28 analysis of the Blase saddle to support his opinion that Blase does not include a separate hinge

24

United States District Court
Northern District of California

area that allows the support portions (in Blase, the rear loops), to flex substantially independently.

Construing this conflicting expert testimony in the light most favorable to Icon, the Court finds that there is a genuine dispute of material fact that precludes summary judgment of anticipation. See Olsen, 363 F.3d at 922 (on summary judgment, the Court must view the evidence in the light most favorable to the non-moving party); Garter-Bare Co. v. Munsingwear, Inc., 650 F.2d 975, 979-82 (9th Cir. 1980) (reversing a district court's grant of summary judgment where the parties provided conflicting expert testimony, but the district court granted summary judgment by relying solely on the moving party's expert testimony); Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc., 843 F. Supp. 2d 1018, 1024-25 (N.D. Cal. Jan. 6, 2012) (relying on expert declarations to find that a genuine dispute of material fact precluded summary judgment).

### ii.       Urban

Specialized also contends that Urban discloses every limitation of Claim 1. ECF No. 153 at 12-13.  Icon disputes this anticipation argument and the opinions of Specialized's expert, Werner. ECF No. 192 at 6-8.  It argues that Urban does not disclose a flexible area that separates the front of the saddle from the rear of the saddle; rather, according to Icon and its expert, the front and rear of the rails move uniformly.  Moreover, Icon contends, the Urban patent teaches a seat that is designed to receive the weight of the rider throughout the perineum and the coccyx, rather than through two separate support regions.  Construing this conflicting testimony in the light most favorable to Icon, the Court concludes that there is a genuine dispute of material fact that precludes summary judgment of anticipation as to Urban.

### iii.      Mesinger

Next, Specialized contends that Mesinger discloses every limitation of Claim 1.  ECF No. 153 at 13-14.  The Court also finds that conflicting expert testimony creates a genuine dispute of material fact precluding summary judgment of anticipation as to Mesinger.  Specifically, although Specialized's expert, Werner, opines that Mesinger discloses each claim element, Icon's expert, Harrigan, states that the cantilevered arrangement in Mesinger means that the support portions are coupled together, and therefore do not move independently of each other as required by Claim 1 of the '180 patent.  Furthermore, to the extent that Mesinger does have one flexible area within the

meaning of the '180 patent, Harrigan has stated that it does not anticipate claim 1 because, on re-examination, the '180 patent was amended to require two separate hinges in order to distinguish it from prior art similar to Mesinger.

#### iv.     Prior Art Commercial Saddles

Finally, Specialized contends that the Mythos, Flite, and Turbomatic saddles, which it states were on sale in the U.S. beginning in 1993 (Mythos) and at least as early as 1994 (Flite and Turbomatic) include each limitation of Claim 1.  ECF No. 153 at 9, 14-19.  In response, Icon argues first that Specialized has failed to prove that the actual seats that its expert tested are prior art and that the testing of these saddles should therefore be disregarded.  The Court will address this argument below in its discussion of Icon's motion for summary judgment.  Second, Icon argues that these saddles do not anticipate the claims of the '180 patent because they do not allow substantially independent movement.  In light of the conflicting expert testimony concerning (1) whether these prior art saddles contain hinges, as claimed in the '180 patent, and particularly whether they allow for independent movement of the support portions of the seat; and (2) the usefulness of instrumented rider testing, FEA, and manual testing to reach anticipation and infringement opinions in this case, the Court concludes that Specialized has not met its burden to establish that it is entitled to summary judgment that claim 1 of the '180 patent is anticipated by the prior art commercial saddles it has identified.

#### c.     Anticipation of Dependent Claims 3-6 of the '180 Patent

Claims 3-6 depend on Claim 1 of the '180 patent.  Because a genuine dispute of material fact exists as to whether Claim 1 is anticipated by the prior art, Specialized has also failed to meet its burden to show that it is entitled to summary judgment with respect to these dependent claims.

#### d.     Anticipation of Claims 12, 14, 15, 17, 21, and 22 of the '180 Patent

Similarly, the Court will deny summary judgment on anticipation of Claims 12 and 14 because each of these claims includes a hinge element that allows the two support portions of the seat to undergo substantially independent movement, as discussed above.  The Court will deny summary judgment that Claims 15, 17, 21, and 22 are anticipated by the prior art because each

United States District Court
Northern District of California

United States District Court
Northern District of California

1    depends on Claim 14.

2                  **e.**        **Obviousness of the '180 Patent**

3           Specialized's motion includes a cursory argument that, even under Icon's definition of the

4    level of ordinary skill in the art, the asserted claims of the '180 patent are obvious because they

5    involve nothing more than simple substitution of known elements according to known methods to

6    yield a predictable result.  ECF No. 153 at 22.  See KSR, 550 U.S. at 416.  For example,

7    Specialized states, the combination of the Mythos saddle with any of Blase, Urban, or Mesinger

8    renders the asserted claims of the '180 patent obvious.  Specialized then refers the Court to

9    Werner's report for more detailed analysis.  ECF No. 153 at 22.

10          Icon is correct that these arguments are insufficient to meet Specialized's burden to show

11   that it is entitled to summary judgment that the '180 patent is invalid because it is obvious.  ECF

12   No. 192 at 13-15.  Dr. Werner does not offer any opinions as to how a person of ordinary skill in

13   the art would combine Mythos with the teachings of Mesinger, Urban, or Blase to arrive at the

14   claimed invention of the '180 patent, which he was required to do.  See ActiveVideo Networks,

15   Inc. v. Verizon Commc'ns, Inc., 694 F.3d 1312, 1327 (Fed. Cir. 2012) (finding testimony of

16   expert witness conclusory, factually unsupported, and insufficient where "[t]he expert failed to

17   explain how specific references could be combined, which combination(s) of elements in specific

18   references would yield a predictable result, or how any specific combination would operate or read

19   on the asserted claims"); Hynix Semiconductor Inc. v. Rambus Inc., 2009 WL 112834, at *6 (N.D.

20   Cal. Jan. 16, 2009) ("[A] challenger must 'articulate how [a prior art] reference anticipates or

21   makes obvious the [claim at issue].'") (citing Koito Mfg. Co. v. Turn-Key-Tech, LLC, 381 F.3d

22   1142, 1151-52 (Fed. Cir. 2004)).  Construing the evidence in the light most favorable to Icon,

23   Harrigan's opinion that none of Specialized's identified obviousness combinations render the

24   patents invalid is sufficient to create a genuine issue of material fact for the jury.

25                 **2.**        **Non-infringement of the '180 Patent**

26                     **a.**        **Legal Standard**

27          "To support a summary judgment of noninfringement it must be shown that, on the correct

28   claim construction, no reasonable jury could have found infringement on the undisputed facts or

                                           27

United States District Court
Northern District of California

1   when all reasonable factual inferences are drawn in favor of the patentee." NetWord, LLC v.

2   Centraal Corp., 242 F.3d 1347, 1353 (Fed. Cir. 2001). "To establish literal infringement, all of the

3   elements of the claim, as correctly construed, must be present in the accused system." Id. For

4   literal infringement of a § 112(f) limitation, the accused device must perform an identical function

5   to the one recited in the claim and must use the same structure, materials or acts found in the

6   specification, or their equivalents. IMS Tech., Inc. v. Haas Automation, Inc., 206 F.3d 1422, 1430

7   (Fed. Cir. 2000). Whether an accused device "performs the identical function with the same

8   structure, materials, or acts described in the specification or an equivalent thereof, is a question of

9   fact." Id.

10                            **b.      All Asserted Claims**

11        Specialized argues first that it is entitled to summary judgment of non-infringement

12   because if Harrigan's manual testing and FEA analyses are excluded, Icon has no evidence to

13   support infringement. ECF No. 153 at 23. Because the Court is denying Specialized's motion to

14   exclude Harrigan's testimony, this argument fails.

15        Second, Specialized argues that any movement of the support portions of the accused

16   saddles is *de minimis* and therefore does not meet the claim limitation that a hinge must allow

17   flexing so that the rear support portions of the saddle undergo substantially independent arcuate

18   movement. ECF No. 153 at 24-26. Specialized contends that such small movements would not be

19   felt by the rider and would not confer the benefits intended by the '180 patent. Id. Icon is correct

20   however, that Harrigan's expert opinion that the accused saddles do have a hinge and a

21   Specialized saddle designer's description of Specialized saddles as including a flexible portion

22   located between the front and rear portions are sufficient to establish that there is a genuine issue

23   of material fact as to whether the accused saddles include a hinge. See ECF No. 192 at 15-17.

24   Moreover, the "energy return" and "comfort" benefits cited by Specialized are discussed in the

25   specification; they are nowhere to be found in the claim language. See Johnson & Johnston

26   Assocs. v. R.E. Serv. Co., 285 F.3d 1046, 1052 (Fed. Cir. 2002) ("[T]he law of infringement

27   compares the accused product with the claims as construed by the court.").

28   / / /

### c.      Stop Means Claims

The Court concludes that Specialized is entitled to summary judgment that the accused saddles do not infringe Claims 12 and 22 of the '180 patent.  Claims 12 and 22 include "stop means" that limit the amount of movement of the support portions.  The Court identified the stop means terms as being governed by 35 U.S.C. § 112(f).  Claim Construction Order at 19.  It identified the relevant function as limiting movement of the support portions and the corresponding structure as follows: "as shown in figures 29 and 32-36, the rearwardly extending free end sections 145, which are spaced from the lower surface of the shell 11 and which extend from outwardly extending sections 159, where the sections 159 and 145 may form a continuously curved profile."  Id.

Icon contends that the ends of the rails of the accused saddles perform the same function as the stop means in the '180 patent and that they are structural equivalents of the structure disclosed in the specification.  ECF No. 192 at 18.  See IMS Tech., 206 F.3d at 1430 (to determine infringement of a means plus function claim, one must determine whether the accused device "performs the identical function with the same structure, materials, or acts described in the specification or an equivalent thereof").  Icon acknowledges that "in the accused Specialized saddles, the ends of the rails are not spaced from each respective support portion like the structure in the specification," but contends that this difference is "insignificant."  ECF No. 192 at 19.

In its claim construction order, the Court described the relevant structure as comprising "rearwardly extending free end sections . . . spaced from the lower surface of the shell," and performing the function of limiting the amount of movement of the support portions.  Claim Construction Order at 19.  Icon does not dispute that the rails on the accused saddles that it identifies as "stop means" are not "free" or "spaced from the lower surface of the shell" such that the shell would move freely until it contacts the stop means.  Rather, the rails are attached to the bottom of the accused saddles.  Even if Icon and its expert are correct that the rails do perform the function of limiting the amount of movement of the support portions of the saddle, it is clear that they do not perform that function "in substantially the same way to achieve substantially the same result."  See IMS Tech., 206 F.3d at 1435.  Accordingly, Specialized is entitled to summary

1    judgment that the accused saddles do not infringe Claims 12 and 22 of the '180 patent, which

2    include the "stop means" terms.

### 3.        Non-infringement of the '938 Patent

4         Specialized contends that it is entitled to summary judgment that the accused saddles do

5    not infringe the '938 patent because (1) they do not have abutment means; (2) they compress soft

6    tissue; and (3) they are not permanently transverse.  ECF No. 153 at 28-31.  Icon disputes this

7    argument.  With respect to the first and third arguments, Icon has established that there remains a

8    genuine dispute of material fact.  Icon points to evidence that the accused saddles do have

9    abutment means because the portions of the shells of the accused saddles that support the ischial

10   bones (as distinct from the entire saddles) are both inclined and shaped to follow the contour of the

11   gluteus maximus muscles.  ECF No. 192 at 19-22.  Icon also offers evidence that this abutment

12   means is permanently transverse with respect to the longitudinal axis of the bicycle and that,

13   without other supports, it is not possible to permanently sit on the abutment means with the

14   backbone of the rider arranged generally vertically.  Id. at 23-24.  While it may be possible to

15   balance vertically on a Specialized saddle, Icon argues, the rider would no longer be sitting with

16   his ischial bones on the abutment means, as described in the '938 patent.

17        The argument that Specialized's saddles do not infringe the '938 patent because they do

18   not compress soft tissue is less straightforward.  Specialized contends that it is entitled to summary

19   judgment because Icon's expert admits that pressure on the tissue outside the ischial bones is

20   generally low on a Specialized saddle, but the claims require that the soft tissue is not compressed

21   at all.  ECF No. 153 at 30.  Icon maintains that the saddles do infringe, because the claims require

22   that "substantially all" or a "majority" of the soft tissue outside the area adjacent to the ischial

23   bones is not compressed, and therefore some compression outside the ischial bones is permitted.

24   ECF No. 192 at 22-23.  Upon review of the '938 patent, it is clear that the claims are not

25   consistent in this respect.  Claim 1 recites that "the rider's soft tissue substantially outside the

26   ischial bone(s) *is not compressed* by the seat when the rider is on the seat."  Looking at this

27   language, it seems that Specialized has the better of the argument.  The claim does not allow for

28   any compression of tissue substantially outside the ischial bones, and Harrigan acknowledges that

United States District Court
Northern District of California

30

there is "generally low" compression on the accused saddles.  On the other hand, Claim 13 works in Icon's favor, as it describes a bicycle seat dimensioned "so that *substantially all the soft tissue* surrounding said portion of the person's seating anatomy *is not compressed* or squeezed by the seat when the person is on the seat."  In other words, some small amount of compression of some tissue is permitted by this claim, as long as substantially all of the soft tissue is not compressed.

In view of this variation in the claim language, the Court concludes that Specialized is entitled to summary judgment of non-infringement of those claims that require that soft tissue substantially outside the ischial bones not be compressed because the parties do not dispute that the Specialized saddles do compress some tissue outside the ischial bones.  This includes Claim 1 ("the rider's soft tissue substantially outside the ischial bone(s) *is not compressed* by the seat when the rider is on the seat"); Claims 2 and 3, which depend on Claim 1; and Claim 11 ("the rider's soft tissue substantially outside the seat *is not compressed* by the seat when the rider is on the seat").

### 4.     Laches

Finally, Specialized seeks summary judgment that Icon's claimed damages are barred by laches.

#### a.     Legal Standard

Laches is an equitable defense to patent infringement.  "The application of the defense of laches is committed to the sound discretion of the district court."  A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1032 (Fed. Cir. 1992) (en banc).  To invoke the laches defense, a defendant has the burden to prove by a preponderance of the evidence both that "the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant" and that "the delay operated to the prejudice or injury of the defendant."  Id. at 1032, 1045. The "district court must weigh all pertinent facts and equities," including "the length of the delay, the seriousness of prejudice, the reasonableness of excuses, and the defendant's conduct or culpability," in order "to determine whether the patentee dealt unfairly with the alleged infringer by not promptly bringing suit."  Id. at 1034.

A delay in filing suit exceeding six years after actual or constructive knowledge of the alleged infringing activity gives rise to a presumption of laches. Id. at 1035-36. This presumption may be overcome by "evidence directed to showing either that the patentee's delay was reasonable or that the defendant suffered no prejudice or both." Id. at 1038. The evidence "need only be sufficient to raise a genuine issue" – "the presumption of laches may be eliminated by offering evidence to show an excuse for the delay or that the delay was reasonable, even if such evidence may ultimately be rejected as not persuasive." Id.

Icon argues that, in light of the Supreme Court's recent decision in Petrella v. Metro-Goldwyn-Mayer, Inc., 134 S. Ct. 1962 (2014), the defense of laches should not bar a claim for damages occurring within the six-year damages limitations period established by 35 U.S.C. § 286. ECF No. 192 at 24. In deciding Petrella, the Supreme Court explicitly left Aukerman intact. See Petrella, 134 S. Ct. at 1974 n.15. Therefore, although the Federal Circuit has granted en banc review of the issue, Aukerman is, at the present time, still controlling precedent. See SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC, No. 2013-1564, 2014 WL 7460970 (Fed Cir. Dec. 30, 2014).

### b.    Discussion

Specialized contends that it is entitled to summary judgment that Icon's claimed damages are barred by laches because Icon and its predecessor, Nelson Seating, unreasonably delayed filing the lawsuit for a period of about ten to eleven years. ECF No. 153 at 31-35. Specialized argues that it has been materially prejudiced by this delay because it has made substantial investments in the Body Geometry saddle line, which includes the accused saddles. Had Specialized received earlier notice, it contends, the company could have proceeded differently by producing stiffer saddles or by pursuing prior art saddle designs.

The Court concludes that Specialized is not entitled to summary judgment on its laches defense because it has not established that no genuine dispute of material fact exists. First, factual disputes between the parties remain as to whether Icon, or its predecessors in interest, had actual or constructive knowledge of alleged infringement more than six years prior to the filing of suit, such that there is a presumption of laches. For example, Icon contends that Specialized has failed

32

United States District Court
Northern District of California

to establish that the Specialized saddles of which Icon and its predecessors may have been actually aware were the same or similar to the saddles accused in this suit.  ECF No. 192 at 25.  Viewing the evidence in the light most favorable to Icon, it is also not clear whether saddles similar to the accused saddles were sold so pervasively in the marketplace that Icon had constructive knowledge of infringement.  Second, assuming that the presumption arises, Icon has introduced sufficient evidence to raise a genuine dispute as to either delay or prejudice.  See Aukerman, 960 F.2d at 1038.  Viewing the evidence in the light most favorable to Icon, a genuine dispute of material fact remains as to whether any delay in filing suit was excusable in light of illness and other litigation activities and whether such delay prejudiced Specialized.  Accordingly, Specialized is not entitled to summary judgment on its laches defense.

### C.     Icon's Motion for Summary Judgment (ECF No. 175)

#### 1.     Failure to Mark

Icon first seeks summary judgment on Specialized's defense of failure to mark.  ECF No. 175 at 3.  In its response, Specialized withdraws this defense.  ECF No. 187 at 1.  The request for summary judgment is therefore denied as moot.  See E.E.O.C. v. Fred Meyer Stores, Inc., 954 F. Supp. 2d 1104, 1116 (D. Or. 2013); Matsuda v. Wada, 101 F. Supp. 2d 1315, 1325 (D. Haw. 1999).

#### 2.     Standing

Icon also seeks summary judgment on Specialized's standing defense.  ECF No. 175 at 5.  In its response, Specialized withdrew this defense.  ECF No. 187 at 1.  However, Specialized has since submitted a notice to the Court stating that it wishes to withdraw this withdrawal in light of a recently filed lawsuit in Australia involving rights to the patents-in-suit.  ECF No. 218.  Because the Australian litigation does not create a genuine dispute of material fact as to standing, for the reasons discussed at the hearing on these motions, the Court denies Specialized's request to withdraw its withdrawal of this defense and denies Icon's request for summary judgment as moot.

#### 3.     Laches

Icon seeks summary judgment on Specialized's laches defense because, it contends, Specialized has no evidence that it was prejudiced as a result of Icon's alleged delay in filing suit.

1    ECF No. 175 at 7-11.  The legal standard for the equitable defense of laches is discussed in

2    Section IV.B.4.a, above.

3         Even if the presumption of laches applies, Icon argues, Icon is entitled to summary

4    judgment because it has sufficient evidence to rebut this presumption and to shift the burden of

5    proof back to Specialized, and Specialized's statements concerning the economic prejudice it has

6    suffered as a result of the delay are insufficient to meet this burden.  Icon argues that statements

7    that Specialized "could have" proceeded differently in its development of the Body Geometry

8    saddles cannot satisfy its burden to "prove that the change in economic position would not have

9    occurred had the patentee sued earlier."  ECF No. 175 at 11 (quoting Gasser Chair Co., Inc. v.

10   Infanti Chair Mfg. Corp., 60 F.3d 770, 775 (Fed. Cir. 1995)).

11        Icon has failed to establish that no genuine dispute of material fact exists with respect to

12   Specialized's laches defense.  Viewing the evidence in the light most favorable to Specialized,

13   there is evidence from which the factfinder could conclude that Specialized was prejudiced due to

14   the alleged delay because any liability for infringement of the '180 and '938 patents was not

15   established before Specialized invested substantial resources in the development and expansion of

16   its accused Body Geometry saddles.  See Adelberg Labs., Inc. v. Miles, Inc., 921 F.2d 1267, 1272

17   (Fed. Cir. 1990) ("Making heavy capital investment and increasing production can constitute

18   prejudice.").

19            **4.    Obviousness of the '180 and '938 Patents**

20        Icon seeks partial summary judgment that the '938 patent is not obvious in light of the

21   combination of Martin with Yates and Flager on the grounds that Specialized has failed to produce

22   any evidence that these combinations render any of the claims of the '938 patent obvious.  In

23   addition, to the extent that the Court excludes Werner's testimony that the '180 patent is obvious

24   based on the combination of Mythos with Urban, Blase, or Mesinger, Icon seeks summary

25   judgment of non-obviousness of the '180 patent due to Specialized's lack of admissible evidence.

26   ECF No. 175 at 11.

27            **a.      '938 patent**

28        Icon argues first that Specialized cannot rely on the combination of Martin with Yates or

34

1   Flager because this combination was not identified in Specialized's invalidity contentions.  ECF

2   No. 175 at 13.  Second, Icon contends that even if this combination had been properly disclosed,

3   Specialized does not have any evidence that these combinations render any of the asserted claims

4   obvious because its expert, Werner, provides only conclusory assertions on this subject.  Id. at 13-

5   15; see Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316, 1329 (Fed. Cir. 2001)

6   ("Broad conclusory statements offered by Telemac's experts are not evidence and are not

7   sufficient to establish a genuine issue of material fact.").

8       The Court concludes that Specialized's invalidity contentions adequately disclose these

9   obviousness combinations.  In the body of the document, Specialized references its claim charts at

10  B-1 and B-2 and states: (1) "Martin anticipates each of the Asserted Claims of the '938 Patent"

11  and (2) "In the extraordinarily broad fashion in which Icon is apparently interpreting the Asserted

12  Claims of the '938 patent, myriad prior art bicycle seats would render the Asserted Claims invalid,

13  including at least Hanson, Yates, West, Flager, Cassani, Mythos, Flite, and Turbo."  Specialized's

14  Amended Invalidity Contentions & Accompanying Document Production Pursuant to Patent L.R.

15  3-3 & 3-4, ECF No. 175-14 at 11.  Each page of claim chart B-1 states: "Each Asserted Claim Is

16  Anticipated by and/or Obvious in Light of Martin Either Alone or in Combination with Other

17  Prior Art."  The only other prior art discussed is that in claim chart B-2, which includes Yates and

18  Flager.  These contentions were adequate to put Icon on notice that Specialized sought to rely on

19  this combination of prior art in its obviousness analysis.

20      The Court has addressed Icon's arguments that Werner's invalidity opinions should be

21  excluded as conclusory in Section III.C.2, above.  Werner's opinions are sufficient to raise an

22  issue of fact with regards to the obviousness of the '938 patent claims.  Icon has therefore failed to

23  show that it is entitled to summary judgment on this issue.

24              **b.      '180 patent**

25      Icon argues that to the extent the Court excludes Werner's opinions that the '180 patent is

26  obvious based on the Mythos in combination with Blase, Mesinger, or Urban, Icon is entitled to

27  summary judgment that the '180 patent is not obvious because the only evidence that Specialized

28  has produced to support its obviousness defense and counterclaim is Werner's testimony.  ECF

United States District Court
Northern District of California

No. 175 at 15.  The Court has addressed Icon's arguments that Werner's invalidity opinions should be excluded as conclusory at Section III.C.2, above.  Because the Court is not excluding Werner's obviousness opinions, Icon's argument is unavailing.

### 5.    Waiver of Indefiniteness Arguments

#### a.    '938 patent

Icon first contends that it is entitled to summary judgment that the '938 patent is not invalid as indefinite because Specialized has failed to provide any support for this counterclaim and defense.  ECF No. 175 at 15-16.  In its response, Specialized withdraws its defense of indefiniteness as to the '938 patent claims.  ECF No. 187 at 7. Thus, Icon's request for relief is moot.

#### b.    '180 patent

Second, Icon seeks summary judgment that the hinge terms of the '180 patent are not indefinite.  ECF No. 175 at 16.  Icon has withdrawn its contention that Specialized's expert opinions on this subject are untimely because they were not disclosed at the claim construction stage.  ECF No. 202 at 8.  It maintains, however, that Icon is entitled to summary judgment on this issue because Werner's opinions on indefiniteness do not raise a genuine issue of material fact.  Id. at 8-9.  This argument is unpersuasive.  Icon has failed to establish that Werner's opinions should be excluded on the basis that they are not his own.  The Court concludes that Werner's analysis of the hinge terms in the '180 patent and, in particular, his opinion that "[t]he claims are indefinite because it is unclear what degree of independent movement there must be in response to what magnitude of load to constitute a hinge" is sufficient to raise a genuine issue of material fact with respect to indefiniteness.  Werner Report ¶ 169.

### 6.    Anticipation of '938 Patent

Icon contends that it is entitled to summary judgment that the '938 patent is not anticipated by Martin, Hanson, Yates, Flager, Cassani, Mythos, Flite, and Turbo because Werner's testimony on this issue is legally flawed.  ECF No. 175 at 19-21.  The Court addresses Icon's argument that Werner's testimony on this issue should be excluded in Section III.C.3, above.  Because Icon's summary judgment argument is premised on the exclusion of Werner's opinions on this point and

because the Court is denying the request to exclude, the motion for summary judgment on this issue is also denied.

### 7.   Physical saddles and Exhibits S & T to Dr. Werner's Report

Icon seeks summary judgment that the Mythos, Turbo, Turbomatic, and Flite saddles identified and examined by Werner and Exhibits S and T to Werner's report are not prior art.  ECF No. 175 at 21-25.

The Court grants summary judgment that Exhibits S and T are not prior art.  Exhibit S is a printout from a webpage, dated July 20, 1997.  Exhibit T is packaging for the Mythos saddle, bearing a copyright publication notice of 1993.  Regardless of whether Specialized can establish a proper publication date for each of these exhibits, it points to no evidence establishing that the exhibits were publicly accessible.  See In re Lister, 583 F.3d 1307, 1312-13 (Fed. Cir. 2009).  Furthermore, the Court notes that Exhibit S, a printout from an internet archive, has not been properly authenticated.  See Open Text S.A. v. Box, Inc., No. 13-cv-04910-JD, 2015 WL 428365, at *2 (N.D. Cal. Jan. 30, 2015).

The Court denies summary judgment that the physical Mythos, Turbo, Turbomatic, and Flite saddles examined by Werner are not prior art.  Icon contends that Specialized has offered no evidence that the saddles examined were sold, offered for sale, or publicly available more than one year prior to the effective filing date of the asserted patents and that Icon is therefore entitled to summary judgment.  ECF No. 175 at 23.  In response, Specialized points to the testimony of James McCarvill, who examined the saddles that Werner tested and testified that they were examples of prior art saddles sold by his former employer, U.S. distributor Quality Bicycle Products ("QBP").  ECF No. 187 at 16-17.  Specialized also notes that the Flite and Turbomatic saddles examined by Werner bear date stamps of 1993 and 1991, respectively, but does not dispute Icon's contention that the date stamps are inadmissible hearsay.  Id.

McCarvill's deposition testimony raises a genuine issue of material fact as to whether the saddles examined by Werner are examples of prior art saddles.  At his deposition, McCarvill identified one Mythos saddle as "an identical-looking saddle, with the same designs as the saddles we were selling in those years, in 1994."  Deposition of James McCarvill ("McCarvill Dep."),

United States District Court
Northern District of California

ECF No. 160-4, at 27.  In his discussion of a second example, he stated that "[i]n '95 it would be a saddle with the same technology, the same rails, the same look," and that there was no design difference between that saddle and the one sold in 1995 "that I'm aware of."  Id. at 28.  He identified the Turbo as "a similar saddle," and commented that the two examples presented to him "look identical" to the Turbo saddles he had sold at a bicycle retailer in the 1980's.  Id. at 31-32.  With respect to the Flite saddles, he commented that each was "identical to what we were selling in those years."  Id. at 35-36.  The Turbomatic saddles were described as "[v]ery similar, if not the same," and "[v]ery similar, if not identical."  Id. at 39.  McCarvill explained that in discussing the Mythos, he meant "identical" to indicate that the saddles were identical "[i]n physical appearance" and "[i]n the technologies that they may have."  Id. at 45.

Icon is correct that McCarvill does not have an engineering background, never designed a saddle, and never studied the structural characteristics of saddles.  McCarvill Dep., ECF No. 193-24, at 66-67.  But he testified that he had the expertise to identify whether saddles are technically identical based on his "30 years of experience purchasing saddles."  Id.  The weight to accord his testimony is a question for the finder of fact.

## V.    CONCLUSION

For the foregoing reasons, the Court hereby: (1) denies Specialized's motion to exclude Harrigan; (2) grants in part and denies in part Icon's motion to exclude Werner; (3) denies Icon's motion to exclude McIlvain and certain paragraphs of Kinrich's expert rebuttal report; (4) grants in part and denies in part Icon's motion to exclude Kunin; (5) grants in part and denies in part Specialized's motion to exclude Bernatowicz; (6) denies Icon's motion to exclude Minkow; (7) grants in part and denies in part Specialized's motion for summary judgment; and (8) grants in part and denies in part Icon's motion for summary judgment.

IT IS SO ORDERED.

Dated:  March 31, 2015

_____
JON S. TIGAR
United States District Judge